J. C. LOMAX V. THE STATE.

No. 22621. Delivered November 17, 1943.
Rehearing Denied January 12, 1944.

The opinion states the case.

*Leslie E. Eason,* of Beaumont, and *F. S. K. Whittaker,* of Houston, for appellant.

*Jas. M. Crane,* District Attorney, of Conroe, *Shelby K. Long,* County Attorney, of Beaumont, and *Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Life imprisonment was assessed against appellant by a jury in a verdict finding him guilty of the offense of rape. Appellant is a negro and the victim is a white woman.

This is a third appeal, the opinion in the first appeal being found in 136 T. C. R. 108, 124 S. W. (2d) 126. The opinion in the second appeal is found in 144 S. W. (2d) 555. The case was reversed by this court on its first appeal and affirmed the second time. Each of the former records contains a written confession by appellant, the admissibility of which was dependent upon the jury's finding that it had been voluntarily made. That issue was submitted to the jury on the second trial and this court considered that it was properly admitted in evidence. At no time did the accused repudiate said statement or offer any evidence to show that force or undue influence had been exercised to secure it. Upon its submission before the Supreme Court of the United States, the case was reversed without written opinion. We note from the reports (313 U. S., p. 543, 85 L. ed. 1511) the following entry:

"May 5, 1941. Per Curiam: The judgment is reversed. Chambers v. Florida, 309 US 227, 84 L ed 716, 60 S. Ct 472; White v. Texas, 310 US 530, 84 L ed 1342, 60 S Ct 1032."

It is assumed from the authorities cited that the Supreme Court of the United States held this confession to be inadmissible. On the third trial of the case the State, following this assumption, failed to introduce the confession in evidence again and the case comes before us without bills of exception, presenting as the chief ground for reversal that the evidence is insufficient to support the verdict. Reference is made to the very comprehensive statement of the facts of the case as found in the opinion on the second appeal, which we find to be substantially the same as that in the present appeal with such

additional evidence as will be herein discussed and with very few minor exceptions.

In addition to the circumstances detailed in the former opinion, the present record shows that the quilt which the assailant picked up about the tent where the crime was committed and wrapped over his head was an old discarded portion of a quilt which the children had been using as a bed for their dog. It was a small white dog with some black spots and his hair was short. On the quilt was found a considerable amount of such hairs. On the next afternoon following the crime, appellant was arrested. Soon thereafter, a state ranger appeared on the scene and examined the quilt. The ranger at once went to the negro under suspicion and examined his head and in his hair found a number of stray white hairs like the ones on the quilt. This was introduced and relied upon as a circumstance to connect appellant with the crime. Further additional evidence is found in the record now before us about a shoe which was secured from appellant's mother in his home. It was testified that in the direction traveled by the rapist from the tent tracks were found in a glade that was damp. The party apparently had slipped and the print of a knee was in the mud. There was a print of a shoe and with it what appeared to be a toe protruding from the shoe which made its imprint in the mud. The shoe found in appellant's home had been recently worn, with signs of mud on it, and it had a large hole from which the big toe would protrude. The officer testified that it would make a similar track to that found in the mud. Also a pair of pants with dirt at the knee was obtained from appellant's mother in his home. The appellant himself directed the officers in finding these articles.

At some time after appellant was arrested and placed in jail, the prosecuting witness was called and testified that she was unable to recognize the negro from his naked legs. She was then blindfolded and the accused, together with four other negroes, was brought into an ell room around the corner from her and the negroes were caused to talk. She recognized the third in the order then given as having the voice of her assailant. The deputy sheriff testified that this party was the appellant. The officers then shifted the five negroes and caused each one to talk again. The prosecutrix, still blindfolded, recognized the fifth negro as having the voice of the assailant. Again the officers testified that this was the accused. She testified positively on the trial of the case that number three in the first and number five in the second instance had the same voice as the negro who talked with her during the assault.

Appellant has attached to his brief what he denominates as exhibits in an effort to show this Court that the State had available means by which they could scientifically have identified the hairs found on the head of the accused with that of the dog belonging to the family of the prosecuting witness. The State is severely criticised in the argument for not having done this. Counsel for appellant, filing a brief in this case, took no part in the trial. It does appear, however, that he was attorney for appellant before the Supreme Court of the United States at the previous date. He also criticises the State for introducing evidence at the third trial which was not in the record in the first and second appeals. A new district attorney conducted the third trial and answered such argument, without criticism of the former prosecutor, that he merely used his best judgment in the present trial. We recall that on both of the other trials the State had available a written confession, the truth of which was undenied by appellant, and that he made no claim of any force or undue influence in obtaining it. Having such evidence, the prosecuting attorney in all probability felt that it would weaken his case to present circumstantial evidence of the kind found in this record along with the confession. The verdict of the jury in both of the former trials vindicates his judgment. At the third trial the State was confronted with quite a different problem. It became the duty of the district attorney to use the available evidence, and this he did. We see no foundation for the criticism lodged against him. In this connection it may be noted that the affair took place in the day time in a small saw mill town where it might reasonably be expected that any and every person could account for his presence in the company of someone. If appellant was at home asleep, his mother would likely have known it. If he was on the street at the time the alarm was given so soon after the crime was committed, witnesses would probably have been available to have so testified. At no time was any such proof offered, and so it is that the appellant may have been derelict in duty in presenting his full case to the jury at either of the trials, to the full extent that he contends the State was in the first two of them. The trial court was entitled to have presented all the facts admissible under the law, in order to reach a fair and just conclusion. The courts are as much concerned with acquitting the innocent as with conviction of the guilty. This evidence was given to the jury as additional evidence and as circumstances further connecting appellant with the crime. Its probative force is attacked.

Considering the foregoing facts in addition to those stated in the former opinion, the question is presented as to whether or not there are sufficient circumstances to lead to a logical con-

clusion that the appellant, and no other person, committed the offense.

The prosecuting witness told a very clear story of the affair and she was corroborated in every detail by those who were soon attracted to the scene of the crime. Her physical appearance at a neighbor's house immediately after her assailant fled graphically presents an appearance forcefully indicating the ordeal through which she had passed, all of which is consistent with the story she relates. The alarm was given; an officer was called; the little saw mill village was aroused; and soon there was a large number of people on the ground. Search was instituted and the circumstances detailed led to appellant's arrest and trial. They were such as logically point to appellant from among many of the colored race residing in the community. No prejudice against him is indicated by the record. Apparently the officers were making a reasonable and logical search for evidence pointing to the guilty party, whomever it might be. After the arrest, additional evidence developed. He was a man about the size and color as described by the prosecutrix. He was not engaged in employment at that time of the day. He had passed the place with a white man in the morning, in what was evidently an idle ride on a truck into the woods and in doing so, disclosed an interest by inquiring the name of the parties living in the little tent as well as the occupation of the husband. After going some distance away from the village, he decided to return. This decision was based on his own independent conclusion for an undisclosed reason or purpose. He caught a ride on another truck and returned to the village, passing the tent by the side of the road. His whereabouts at the time of the commission of the offense are not accounted for by anyone other than the prosecutrix. This places him in a position to make it possible for him to be present when the crime was committed. The interest which caused him to make the inquiry at least casts some suspicion on him. When night came, he went to the saw mill to his employment as a night watchman. The foreman found him in the early part of the night on top of a boiler about eight feet high instead of being at his work, and he explained that he was afraid of the dogs (evidently referring to blood hounds which had been brought from the penitentiary to trail and locate the guilty party). About three or four o'clock the next morning the foreman returned to the saw mill and again found him on top of the boiler. This is not a convincing circumstance but is one which the jury had a right to consider, together with all of the others. The evidence of the dog hairs found in his hair the next day and of the shoe and the pants found in his home, together with the voice identifica-

tion, are chiefly relied upon by the State as additional evidence to sustain the verdict. Standing alone, any one of these circumstances would, within itself, be inadequate. So it is in most circumstantial evidence cases. Otherwise, the testimony would become direct instead of circumstantial. Pieces of a jig saw puzzle may indicate nothing, but a sufficient number of the parts, properly related, give a clear picture.

The facts herein stated may not be sufficient to convince all people of the guilt of the accused but a party on trial fortunately is not subjected to public opinion. If it were so, the guilty would frequently go unpunished and the innocent suffer for the crime of another. The judgment as to the sufficiency of the evidence rests with the jury, conditioned that there is enough as a matter of law to warrant them in their conclusion of guilt. Our province is to determine that as a matter of law and we are not called upon to say that the jury was right or that it was wrong. They had evidence upon which they could find him guilty if they chose to do so.

It is not necessary to write a thesis on the law of circumstantial evidence. There is no particular construction to be placed on the evidence before us to require it. It is our conclusion that the circumstances herein detailed, in view of all the evidence of the case referred to in the former appeal, support the jury's verdict not only as a matter of law but as a reasonable conclusion. The complaint that the evidence was insufficient will not be sustained.

A question of the jurisdiction of the Criminal District Court of Jefferson County, Texas, to try the case is challenged on the ground that the case was not properly transferred to it. The prosecution arose in Montgomery County where it was first tried. The court then transferred the case to Walker County where the second trial was had. After the second reversal, the judge of the district court in Walker County transferred it back to Montgomery County, the place of its origin. That court arraigned appellant, took his plea of not guilty, and then transferred the case to the Criminal District Court of Jefferson County. The record does not disclose that he was again arraigned and caused to plead in the Criminal District Court of Jefferson County. This failure of the record is complained of and the contention made that it is fundamental error. We are unable to find fault with this procedure. The District Court of Walker County undoubtedly had power to transfer the case and it was not inhibited from sending it back to Montgomery County. Art. 560, Vernon's Ann. C. C. P. His arraignment be-

fore the District Court of Montgomery County, before entering an order again transferring it, met the requirements and it was not necessary that he be again arraigned by the court in Jefferson County. His plea had been entered and that was a part of the record before him. It is further observed that nothing in the record complained of the failure of the District Court of Jefferson County to arraign the accused and no presumption will be indulged that it was not done. Spaulding v. State, 127 S. W. (2d) 457, on the necessity therefor. See Steen v. State, 242 S. W. 1047, and Sims v. State, 36 S. W. 256. It affirmatively appears from the judgment in the case that the accused appeared in court personally and by counsel; that he announced ready for trial; that he pleaded to the charge contained in the indictment; that a jury of twelve men were duly selected, impaneled, and sworn; that they heard the indictment read, together with defendant's plea of not guilty thereto; that they heard the evidence and the charge of the court; and that thereafter they retired to consider the verdict which they later returned. The judgment recites a procedure that appears to be in complete accord with legal requirements, so far as we are able to ascertain.

It follows that we find no error in the trial of the case and the judgment of the trial court is accordingly affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant again complains because of the fact, as alleged by him herein, that it is not shown in the record that this cause was properly and legally transferred from the district court of Walker County to the district court of Montgomery County; that therefore the Montgomery County district court had no power to transfer this cause to Jefferson County where the same was finally tried. In support of such proposition we are cited to the case of Moore v. State, 49 Texas Cr. R. 499, 96 S. W. 321. We are of the opinion that this proposition raises a question of venue rather than one of jurisdiction; that it was the duty of appellant to have objected to the change of venue from Walker County to Montgomery County by proper bill of exceptions, if appellant thought the same was improperly or improvidently thus transferred. The Moore cause, supra, holds:

"He (the district judge) did have the authority to change the venue, and in our judgment if appellant wanted to raise any question in regard to that change of venue, and the orders mov-

ing the case from Lamar to Delta (County), he should have reserved his bill of exceptions at the time the order was entered in Lamar County. Our statute requires this, and the uniform and unbroken line of decisions in this State sustains this view."

In our words, if appellant was dissatisfied with the return of this cause from Walker County to Montgomery County he should have evidenced such by a proper bill of exceptions taken in Walker County. We find no such bill of exceptions in the record. However, we do find the following agreement of counsel, in open court, in the record:

"Counsel for the State and counsel for the defendant, have agreed on the jurisdiction of this court in order to keep from making the record more voluminous, by introducing all the papers showing the change of venue from Montgomery County to Jefferson County. It is agreed and stipulated between counsel for the State of Texas and the defendant, that this case has been properly transferred to this court."

It is intimated in the motion filed herein that appellant was defended by counsel appointed by the court to prepare his defense. The record does not disclose such fact; all shown therein is that he had counsel representing him in the trial. The fact of his poverty is shown only in a statement in appellant's motion by the attorney presenting such motion.

The remaining portion of this motion is concerned with an argument on the sufficiency of the presented facts. That this is a case of circumstantial evidence is patent, and was charged upon as such by the trial court. Each circumstance, standing alone, could only be utilized as a circumstance, and of itself would not be expected to foreclose the fact of appellant's guilt, but the accumulated circumstances, when taken together, we think have sufficient cogency to convince a reasonable mind that the appellant committed the offense charged. That this instant trial is presented in another and different method from that pursued in the previous trials hereof may surely be seen to be caused by a difference in the prosecuting attorneys, it being shown that during the years this cause has drawn its length along the legal channels of our State, changes have taken place in the personnel of our district attorneys, and other minds directed this present trial than the ones who initiated this matter more than five years ago. Evidently, being without knowledge as to the motivating reason for the reversal of this cause by the Supreme Court of the United States, the prosecuting attorney eliminated all portions of the former trial that met

with the objection of appellant's attorney in such trial, and in such an endeavor was forced to rely upon circumstances alone; but when such circumstances are strong enough to exclude every other reasonable hypothesis they become as dependable as though direct evidence was present.

We see no fundamental error present herein, and therefore overrule the motion.