**Junior BROWN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–82–127–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 19, 1983.

Jack P. Martin, Lubbock, for appellant.

Mac Smith, Dist. Atty. by Dan Carney, Asst. Dist. Atty., Weatherford, for appellee.

Before FENDER, C.J., and JORDAN and ASHWORTH, JJ.

## OPINION

FENDER, Chief Justice.

Appellant, Junior Brown, was convicted by a jury of aggravated robbery. Two enhancement paragraphs were found to be "true" so the court assessed punishment at life imprisonment.

We affirm.

Brown asserts in four grounds of error that: (1) the evidence is insufficient to corroborate the testimony of the accomplice witness, (2) one of the enhancement paragraphs was based upon a void conviction, (3) the testimony of Officer Hutson identifying Appellant and his vehicle was the product of an illegal seizure and detention and (4) the prosecutor discussed an extraneous offense alleged in "Count III" of the indictment knowing that the State had no evidence to support "Count III."

Ground of error one asserts that the evidence is insufficient to corroborate the testimony of the accomplice witness, Tommy Glynn McLoud, as required by

TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979). The test for sufficiency of such corroborating testimony requires us to eliminate from consideration the testimony of the accomplice witness and then to examine the testimony of other witnesses to see if there is other incriminating evidence tending to link the accused with the commission of the offense. *Meyers v. State,* 626 S.W.2d 778 (Tex.Cr.App.1982). Although other witnesses may corroborate any number of facts stated by the accomplice witness, corroboration on this basis does not meet the requirements of Article 38.14 unless these facts tend to connect the accused with the crime. *Paulus v. State,* 633 S.W.2d 827, 844 (Tex.Cr.App.1981); *Odneal v. State,* 117 Tex.Cr.R. 97, 34 S.W.2d 595 (1931). The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt, but it must make the accomplice witness' testimony more likely than not. *Warren v. State,* 514 S.W.2d 458 (Tex.Cr.App. 1974). Lastly, it should be noted that while the mere presence of the accused in the company of the accomplice shortly before or after the commission of the offense is not, in itself, sufficient corroboration, such presence may be sufficient when coupled with other circumstances. *Nelson v. State,* 542 S.W.2d 175 (Tex.Cr.App.1976).

The record reflects that the accomplice witness McLoud and Wesley Patterson robbed Mrs. Fannie Evans and her husband at gunpoint in their home in the Cherry park area of Weatherford. The park faced the Evans' house and, according to McLoud, this is where Brown, who was the getaway driver, was to pick them up. Outside of the testimony of McLoud, there were two witnesses who can be said to link Brown to the robbery. Reginald Henderson, who also lives across the street from the park, testified that he saw a black and gray pick-up about 8:15 on the morning of the robbery. There were three men in the pick-up—two with toboggans and beards and one clean shaven. He later saw the pick-up parked across the street from his house by the park and at several other places around the park. There was only one man in the pick-up

these other times. Henderson became suspicious and watched the pick-up circling the park. He noted the license number, RH2743, and called the police about 9:30 a.m. Henderson could not identify a picture of the pick-up as the one he saw, nor could he identify Brown as the man in the pick-up.

Henderson called the police again at 10:00 a.m. when he saw the two men in beards and toboggans standing on the corner in front of his window. One was carrying a coat under his arm and a white shopping bag. Later he observed the man with the shopping bag being arrested. He also testified that the pick-up broke its pattern of circling the park and "shot a right" after he called the police the second time. He did not see the pick-up again.

Officer Jonathan Hutson testified that he went to the Cherry Park area of Weatherford in response to a suspicious vehicle call at 9:38 a.m. He circled the park twice, looking for a 1981 Ford pick-up, two-tone, black and charcoal gray, Texas license RH2743, reportedly occupied by three white males. As he was leaving the area of the park he saw the pick-up parked at a stop sign next to the curb and occupied by Brown. Brown was seated casually in the pick-up but, upon making eye contact with Hutson, Brown "got kind of a panicky look on his face," immediately uprighted his position, pulled his vehicle into gear and made an improper left turn (no signal) from a parked position. Hutson said Brown did not have to start his vehicle to drive away.

Hutson followed and stopped Brown. Brown got out of the pick-up and gave Hutson his driver's license. Hutson then told Brown of the suspicious vehicle call and asked Brown if he had been with two other people that morning. Brown replied that he had been alone all morning and that he was waiting for a friend at Cherry Park. Hutson then checked for a possible wanted or stolen on Brown and the pick-up and, upon receiving a negative response to his inquiry, let Brown go about 9:50 a.m. The stop began at 9:45 a.m.

The record indicates that the black and gray pick-up with Texas license RH2743 was in the Cherry Park area from 8:45 a.m. to shortly after 10:00 a.m. The record further reflects that the two men who committed the robbery were in the pick-up at 8:45 a.m. and that Brown was driving the same pick-up at 9:45 a.m. in the immediate area of the park. It shows that Brown reacted suspiciously upon being stopped and denied any company that morning in conflict with Henderson's testimony. We hold that this record is sufficient to link Brown to the robbery and corroborate McLoud's accomplice testimony.

*Meyers v. State (supra),* cited by Brown, is distinguishable on its facts from the instant case. In *Meyers,* the testimony placed the defendant in the same Mustang as the accomplice witness thirty minutes before the robbery and a few blocks away from the place of the robbery. It also showed stolen items were found in the abandoned Mustang after the robbery. However, in the instant case Brown was not only shown to be in the presence of the accomplice witness shortly before the robbery, but was also shown to be circling the area suspiciously, attempting to avoid contact with a police officer. He further denied, in contradiction to Henderson's testimony, that he had been with anyone that morning.

*Gary v. State,* 379 S.W.2d 661 (Tex.Cr. App.1964) is also distinguishable. In that case, the defendant also denied being in the company of the accomplice prior to the offense. Gary testified that he and his girl friend had just come upon the accomplice and offered him a ride shortly before the police stopped the automobile. The victim testified that he had seen a green and white Cadillac parked at the curb and that a man (the accomplice witness) got out of the car and came into his station. The man left after attempting to gain entrance to the cash register and returned to the car. Later that night the same man returned alone and robbed the victim at gunpoint. The money was recovered from the accomplice's pockets a short distance away from the station while he was seated in the back seat of Gary's green and white Cadillac. It

should be noted that the victim neither saw nor heard an automobile at the time of the robbery. However, in the instant case, Henderson saw the same pick-up circling the park during the entire transaction. The evidence is clear that the pick-up stopped by Officer Hutson was the same one seen by Henderson with the perpetrators inside. Ground of error one is overruled.

Ground of error two asserts that a prior conviction used for enhancement of punishment under TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1974) is based upon a fundamentally defective indictment. The State offered two pen packets as proof of the allegations in the enhancement paragraphs and these were admitted over various objections made by Brown. In support of his objections to the pen packet in Cause No. 1718, Brown introduced a certified copy of the records in that cause (Defendant's Exhibit 2). He argued that the indictment does not state an offense because it does not conclude, as required by the Constitution, TEX.CONST. art. V, § 12, and by Statute, TEX.CODE CRIM.PROC.ANN. art. 21.02 (Vernon 1966): "Against the peace and dignity of the State."

The record reflects that the State made no objection to the introduction of these records. The court noted on examining the indictment that "it appears that the copy, on this thing, was cut off before a signature line for the indictment ..." and "It appears to me that they didn't make a copy of the whole indictment." The court then went on to overrule Brown's objection based on that indictment.

We hold that the court's ruling was correct. The evidence before him was, on its face, a partial copy of the indictment in the prior conviction relied on for enhancement. As such, there is no showing that the real indictment in that cause was defective. Ground of error two is overruled.

Ground of error three asserts that Officer Hutson's testimony should have been suppressed because it resulted from an illegal detention and seizure. The record reflects that Hutson stopped a vehicle

matching the description given in a suspicious vehicle call that committed a traffic violation in his presence. The traffic violation alone authorized the initial stop. *Dillard v. State,* 550 S.W.2d 45, 50 (Tex.Cr. App.1977). Ground of error three is without merit and is overruled.

Ground of error four asserts error in denying Brown's motion for mistrial based on the prosecutor's discussion in his opening statement of offenses alleged in count three knowing that the State had no evidence to support such count. Count three alleged the offense of unlawful possession of a firearm by a felon and a prior felony conviction.

The record shows that the State withdrew count three when the court made it known that he would not allow the State to seek a conviction on all three counts. The accomplice witness McLoud did testify that Brown possessed a firearm. Thus, the State did have evidence to support this count and there is no showing in the record of any "bad faith" by the State in failing to present it to the jury. Ground of error four is overruled.

The judgment is affirmed.