**Donald Gene FRANKLIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 69026.

Court of Criminal Appeals of Texas,
En Banc.

June 26, 1985.

Rehearing Denied July 24, 1985.

David K. Chapman, San Antonio, (Court-appointed), for appellant.

Sam D. Millsap, Jr., Dist. Atty., and Bill Harris, Mitch Weidenbach, Alan E. Battaglia and Linda C. Anderson, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

This is an appeal taken from a conviction of capital murder. V.T.C.A. Penal Code, § 19.03. The death penalty was imposed after the jury answered affirmatively the special issues submitted under Article 37.-071, V.A.C.C.P. Appellant's previous conviction for the same offense was reversed because the State improperly impeached appellant on the basis of his failure to testify to his exculpatory story at a pre-trial hearing. *Franklin v. State*, 606 S.W.2d 818 (Tex.Cr.App.1979) (Opinion on Rehearing). The retrial conducted after this court remanded the case was held in Harris County. After the verdict was returned in that case, the trial judge granted appellant's motion for a new trial because of error in the court's charge. The new trial was set in Bexar county, but was moved to Cameron County on a change of venue. Appellant now alleges twelve grounds of error arising from the trial he received in Cameron County. The sufficiency of the evidence is not attacked.[1]

In his first ground of error, appellant contends that the trial court erred by granting the State's challenge for cause to potential juror Flavia Santana. The record of the voir dire examination of prospective juror Santana reflects:

"Q. One of the general principles of law we talked about yesterday was the burden of proof. We have talked about it again today and we have, I think, from a different angle, but let me tell you directly, if you don't already know.

The burden of proof is on the State. We have the burden of proving this case, as we do in every case in Texas, the burden of proving the guilt of the Defendant beyond a reasonable doubt. Would you hold the State to that burden or would you, in a circumstantial evidence case, hold the State to a higher burden when you say that you would want to be one hundred percent sure.?"

"A. Yes. I would expect the State to prove to me that—

"Q. I know we have to prove it beyond a reasonable doubt. But it seems to me you are saying you will hold the State to a higher burden, that you will require the State to prove the guilt of the Defendant beyond any doubt whatsoever or beyond a shadow of a doubt. Do I misunderstand you?

"A. What is it that you are asking? I don't understand. You are saying that the law only requires that you prove guilt beyond a reasonable doubt?

"Q. Right.

"A. And I'm saying that I want to be more than reasonable. Is that what you saying.

"Q. Yes, that is basically what I'm asking.

"A. That's true in this case. I feel that the case is serious enough that's [sic] I will want to be more than reasonably convinced.

"[Prosecutor]: We again challenge for cause because the juror cannot follow

---

1. The facts of this case are not necessary to our disposition of appellant's claims; however, they are set out in detail in *Franklin*, supra, at 819–821.

the law upon which the State has a right to depend.

"[Defense Counsel]: May we inquire, Your Honor?

"THE COURT: Yes.

"Questions by [Defense Counsel]:

"Q. Isn't what you are really saying is in view of the open but final penalty attached to a Capital murder case, that is a possibility of a person being put to death, that your view of what might be a reasonable doubt would be that much stricter in your own mind and that it would invest your deliberations with that much more cause before voting guilty?

"A. That's true.

"Q. Wouldn't that be a fair statement? And so really all you are saying is what you would consider to be a reasonable doubt would be that much stricter because of the maximum penalty?

"A. Yes.

"[Defense Counsel]: We submit—"

[The State's attorney then challenged Ms. Santana for cause, which the trial court overruled.]

"Questions by [Prosecutor]:

"Q. You seem to give me one answer and you give Mr. Cazier another answer. You are either going to follow the reasonable doubt or you are not?

"A. Okay. I want more than a reasonable doubt. Okay.

"Q. You want proof beyond any doubt whatsoever?

"A. Right.

"Q. Knowing that the burden of the State under state law is that we only have to prove the guilt beyond a reasonable doubt?

"A. Right.

"[Prosecutor]: We submit that juror is subject to challenge for cause.

"THE COURT: Okay. Mr. Cazier, did you have any final questions?

"[Defense Counsel]: Yes.

"Questions by [Defense Counsel]:

"Q. Mrs. Santana, the problem is that the law in civilized countries knows no higher burden than beyond a reasonable doubt. Okay. And that burden is just about as high as an individual juror wants to make it. Nobody is going to define for you or tell you what is a reasonable doubt, okay. It is your decision to decide what is reasonable and to say whether or not you have a doubt. Knowing that, I want to ask you again, if what you are really saying, I guess so simple that in view of the finality of the death penalty, that your construction of the term reasonable doubt would be very very strict not that you would go beyond the law and require total certainty, but only that you will require a very strict interpretation of reasonable doubt. Would that be so?

"A. Let me ask you something first. Does that mean then that a reasonable doubt is different in each person's mind, like what is reasonable for me could not be for you or vice versa?

"Q. That's right. That's why we have twelve jurors instead of one?

"A. So your question was?

"Q. Isn't what you are really saying that your construction of the term reasonable doubt would be very very strict, not that it would be anything higher than beyond a reasonable doubt.?

"A. Well, what is higher than a reasonable doubt.

"Q. Total certainty, I would assume.

"A. Well, I will say then that my level or my whatever, for reasonable doubt is very high.

"...

"Questions by [Prosecutor]:

"Q. Didn't you also say that your reasonable doubt would be different in a Capital case than it would say in some other case?

"A. Yes, sir.

"Q. Because of the very nature of it, and didn't you say you would have to be one hundred percent convinced before

you find a person guilty of Capital Murder?

"A. I said that.

"[Prosecutor]: We renew our challenge for cause.

"THE COURT: Mrs. Santana, would you have to be absolutely certain of a person's guilt before you could find him guilty? Would you have to be absolutely certain?

"A. Yes.

"THE COURT: All right. Now the court is going to instruct the jury in every case, that a defendant's guilt must be proved by legal and competent evidence beyond a reasonable doubt. Would you hold the State to a more severe burden than that? Would you make them prove it to an absolute certainty?

"A. Well, it would—they would have to prove to me beyond a doubt and up to one hundred percent.

"THE COURT: All right.

"A. In other words, my limit as far as doubt is very high. It is very close to one hundred percent. And I'm sorry if I am not making myself clear.

"THE COURT: You are making yourself clear."

[Whereupon the trial court granted the State's challenge for cause.]

Appellant maintains that this testimony indicates potential juror Santana was manifesting a special concern for the seriousness of the ultimate penalty, and was voicing the kind of conscientiousness deemed proper for a juror by the United States Supreme Court in *Adams v. Texas*, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980) and *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Thus, her exclusion for cause was error which mandates reversal by this Court. The State counters that the testimony indicates that potential juror Santana intended to impose a heavier burden of proof upon the State than that which the law requires. We agree with this latter argument.

Article 35.16(b)(3) provides that a challenge for cause may be made by the State if the juror "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." In *Hawkins v. State*, 660 S.W.2d 65 (Tex.Cr.App.1983), the defendant was charged with capital murder. During voir dire, a potential juror stated that the State's proof would have to convince her to a certainty before she would find the defendant guilty. She added that if there were any doubt in her mind, she would consider such a doubt to be reasonable. We held that the court had properly sustained the State's challenge for cause since the prospective juror indicated she would hold the State to a more stringent standard of proof than beyond a reasonable doubt.

Similarly, in *Cannon v. State*, 568 S.W.2d 344 (Tex.Cr.App.1978), a potential juror was examined during voir dire and repeatedly and unequivocally testified that in answering the second question at the punishment hearing, Art. 37.071(b)(2), V.A.C.C.P., she would hold the State to a more stringent standard of proof than beyond a reasonable doubt. This court held that she was properly excluded for cause under Art. 35.16(b)(3). See also cases cited *id.* at 349.

In the case at bar, we find that the testimony elicited from prospective juror Santana indicated that she would hold the State to a higher standard of proof than beyond a reasonable doubt. Moreover, we accord some deference to the trial court's determination given that he was in a position to gauge the sincerity and demeanor of the prospective juror's answers. See *Bird v. State*, 692 S.W.2d 65 (Tex.Cr.App.1985), citing *Wainwright v. Witt*, —— U.S. ——, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Thus, the trial court properly sustained the State's challenge for cause. Appellant's first ground of error is overruled.

In his second and third grounds of error, appellant argues, respectively, that the trial court erred by granting the State's challenge for cause to prospective juror Juanita Garcia, and it erred by allowing the State

to use one of its peremptory challenges retroactively on Juanita Garcia. The record reflects the following testimony during the examination of prospective juror Juanita Garcia:

"Q. [By Prosecutor] Do you feel that there is a distinct possibility that knowing what the punishment could be in this case, that that would influence you in arriving at a verdict or deliberating on any issue of fact in this case?

"A. Yes.

"Q. Do you think it would influence you?

"A. Because I have a personal problem that is similar to this.

"Q. And is this something to do with your family?

"A. Yes. My son.

"Q. Is your son named Ernest Abraigo?

"A. Armando Ernesto. He has two names.

"Q. Abraigo. He has been involved, I am told, in a case like this as a Defendant?

"A. (Nodded head).

"Q. And I'm sure there [sic] is very upsetting to you. Do you think that because you have this personal problem that that would influence you in sitting as a juror in this case?

"A. I think it would.

"Q. You think that would prevent you from being fair to the Defendant or the State either one, without saying which way?

"A. I think it would.

"Q. I don't like to belabor the point but we have to be very careful in this case. Let me ask you a little bit about your feelings about the death penalty. I think you told the Court that you may have some conscientious scruples or deep seated feelings concerning the death penalty?

"A. Yes.

"Q. Do you feel that sitting as a juror, if you were chosen to sit as a juror in a Capital Murder case that you would automatically exclude the death penalty or automatically vote against the death penalty?

"A. I might, I am not sure.

"[Prosecutor]: I will stop at this point and ask that the juror be excused for cause based upon her statement that she feels she will not be fair in the case and it might influence or affect her verdict.

"THE COURT: Well I will not grant your challenge at this time. You can continue.

"Q. Did we make it clear the procedure that we follow in assessing a punishment in a Capital Murder case?

"A. Yes.

"Q. ... Do you feel that if chosen as a juror in a Capital Murder case and found the Defendant guilty, could you answer those questions fairly based upon the evidence that you heard?

"A. I don't know because of again my personal problem. It is to, you know, hurting still because and I don't think I could be a fair juror.

"Q. Well, are you saying to us that you feel that you are not fit for jury service in this particular case because of this pressing problem?

"A. Yes.

"Q. And I appreciate, we all appreciate your sincerity and candid manner in which you are answering the questions. I certainly understand how you feel.

Your own discretion or feelings about it, is you may be fit for jury service in some other case, but you will not be fit for service in this case?

"A. Yes.

"Q. Would that be a fair assessment of your feeling?

"A. Yes.

"[Prosecutor]: We would ask the juror be excused for cause under the provision of Section 4 of 3516(a) of the Code of Criminal Procedure.

"THE COURT: 3516(a) 4 concerns defects.

"[Prosecutor]: Well, I think down at the last it says or the prospective juror in his discretion is not satisfied that he is fit for jury service in that particular case.

"THE COURT: All right. Thank you. Does the Defendant have questions of this venire person?

"[Defense Counsel]: I do, Your Honor.

### "EXAMINATION

"Questions by [Defense Counsel]:

"Q. Mrs. Garcia, a juror in any type of criminal case is required to take the oath and swear to God that he will a true verdict render based upon the law as submitted to the jury by the Court and the testimony which is received under the rulings of the Court. Now, I notice that, and I am sure that you are a religious person, you yourself are a law abiding citizen. I take it that you would take an oath very seriously. And what I want to ask you is without regard for the problem of your son and how it may affect you, you will not violate your oath so as to return a verdict that was not a true verdict, would you?

"A. Would you please state it again?

"Q. It is really this; would you violate your oath as a juror in order to return a false or untrue verdict to avoid the assessment of the death penalty?

"A. I think I would.

"Q. But you are not sure?

"A. No.

"[Defense Counsel]: I submit she is not disqualified under Weatherspoon [sic]. And Subsection 4 has to do with a physical defect that would affect the person's fitness to serve.

"THE COURT: Does the State have any further questions regarding this Vinary [sic] person?

And is the sole basis of your challenge 3516(a) 4?

"[Prosecutor]: Yes.

"[Prosecutor]: Not just physical defect but mental defects, not in the sense of incompetency but in the sense a personal matter would certainly appear to me to influence or affect the verdict in this case.

### "EXAMINATION

"Questions by [Prosecutor]:

"Q. I hate to delve [sic] on this but may I ask you, was your son convicted of Capital Murder?

"A. Well, at first yes, but then they took the Capital off and it was just murder.

"Q. What was his sentence?

"A. Life.

"Q. How long ago was that?

"A. One year.

"Q. Just a year ago. Was that here in Camerson [sic] County?

"A. No, Mattagorda [sic] County.

"Q. Is that the next county over?

"A. Bay City.

"Q. That is up near Houston .. Was he found guilty of Capital Murder at the beginning, did you say?

"A. (Nodded head).

"Q. And it was later reduced to murder?

"A. Yes.

"Q. Do you think—it would be very difficult to do, but do you think is there any possibility that you will be able to set aside your personal feelings in this incident that has occurred involving your son and yourself and decide this case, if chosen as a juror on the facts that you hear?

"A. I will try. I will try to do that.

"Q. Do you think you can do that without it affecting your verdict in the case? Do you feel that you can apply all of the law and determine this based upon what you hear?

"A. Well, yes. I mean—

"[Prosecutor]: No further questions.

"[Defense Counsel]: No questions.

"THE COURT: Well, I am going to interrogate you further.

What is the challenge for cause again?

"[Prosecutor]: The same under Article 3516(a) 4, the juror is, in her discretion, feels she is not fit for service on this particular case.

"THE COURT: I want you to turn around and look at those two issues behind you and read them to yourself again.

All right. Would the incident involving your son prevent you from answering those questions 'Yes,' if you served on this case and heard the evidence in this case, realizing that the answer 'Yes' on both of those questions, was agreed to buy [sic] all of the members of the jury and would lead to the assessment of the death penalty? Would that prevent you from answering—would the fact that your son was involved in his incident, would that prevent you from answering these questions, 'Yes', knowing that the answer to both of those questions 'Yes', would lead to the assessment of the death penalty?

"A. I think it would.

"THE COURT: I grant the challenge for cause."

The record further shows that after the State was granted its challenge for cause, the trial court recessed the proceedings for ten minutes. When the proceedings were reconvened, the State indicated that it may have misread the Code of Criminal Procedure with respect to the section cited as a basis for Ms. Garcia's challenge for cause, and requested that it be permitted to withdraw the challenge and exercise a peremptory strike. The court granted the request.

We will first address appellant's third ground of error. He contends that based upon our decision in *Grijalva v. State*, 614 S.W.2d 420 (Tex.Cr.App.1980), the State should not have been allowed to exercise retroactively its peremptory strike.

In *Grijalva*, the State sought to exercise a peremptory strike after an erroneous exclusion for cause was found on appeal. We departed from a line of cases permitting late exercise of peremptory strikes and held that such a practice gave the State unfair advantages in the jury selection process for capital cases. Our decision was based upon three benefits given to the State. First, the practice permitted the State and not the defendant to exercise its judgments with a perspective of the entire jury panel. Second, the State could avoid wasting a peremptory strike on a veniremember struck by the defendant. Third, allowing the State to exercise a peremptory challenge on appeal permitted it to transform a peremptory strike against a prospective juror into a peremptory strike against a ground of error. *Id.* at 424–425. Cf. *Pierson v. State*, 614 S.W.2d 102 (Tex. Cr.App.1980).

Initially, in the instant case the State was not permitted to exercise its peremptory strike retroactively. In *Grijalva*, supra, the State sought to exercise its peremptory strike on appeal. In *Vigneault v. State*, 600 S.W.2d 318 (Tex.Cr.App.1980), cited in *Grijalva*, supra at 424, the State was allowed to wait until the conclusion of the jury selection before exercising four unused peremptory strikes.

At the trial below, since no other prospective jurors were examined or struck between the granting of the challenge for cause and the request to substitute a peremptory challenge, the challenge was not retroactively made. Rather, the State was permitted to correct an error made in the challenge to Ms. Garcia ten minutes earlier.

■ Also, the benefits considered in *Grijalva*, supra, did not inure to the State when the substitution request was granted. We do not read *Grijalva* to hold that once the State voices its challenge, the challenge becomes set in stone and cannot be changed. Thus, the trial court did not err in permitting the State to exercise its peremptory challenge. Appellant's third ground of error is overruled.

Given our disposition of appellant's third ground of error, examination of his second ground is unnecessary. Appellant's second ground of error is therefore overruled.

In ground of error number four, appellant contends that the trial court erred by denying appellant's motion for mistrial after Detective Urban testified about appellant's refusal to talk to him after being warned of his *Miranda*[2] rights. The record reflects the following exchange be-

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tween the attorney for the State and Detective Urban:

"Q. [State's Counsel] Then what did you do then?

"A. [Urban] I took Mr. Franklin back to the police station.

"Q. Where particularly in the police station?

"A. The Second floor to the Homicide Office.

"Q. And did you have a conversation with him there?

"A. I talked to him but he refused to talk to me.

"Q. Following—

"MR. CAZIER: Excuse me, I object to that question, or answer rather, that he refused to talk to him, as being a comment on the exercise of the Constitutional Right by a person in custody.

"THE COURT: Well, I'm going to sustain that for now. Ladies and gentlemen, don't consider that response that ''he refused to talk to me." Strike that from the record.

"MR. CAZIER: Notwithstanding the Court's instructions, we move for a mistrial.

"THE COURT: Denied. Go ahead."

■ In his brief, appellant asserts that the testimony elicited from Detective Urban was a comment on his post-arrest silence in violation of the Supreme Court opinions in *Miranda*, supra, and *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 48 L.Ed.2d 91 (1976).

In *Dudley v. State*, 548 S.W.2d 706 (Tex. Cr.App.1977), we held:

"A defendant's silence or negative reply to a demand or request by an officer made upon him while under the necessary compulsion attendant with custodial arrest, which demand or question reasonably calls for an immediate reply by the defendant, is clearly a tacit or overt expression and communication of the defendant's thoughts in regard thereto. [citing *Doyle*, supra].

.        .        .        .        .

Art. 38.22, V.A.C.C.P. has been consistently construed by this Court as prohibiting proof of an accused's oral statements, silence or acts, if made while under arrest and tending to communicate thoughts of the defendant of an incriminating nature. [citations omitted]."

*Dudley*, supra at 707–708. Thus, inquiry or evidence regarding appellant's failure to answer Detective Urban's questions while in custody would not be admissible as impeachment against appellant or as proof of some independant fact. See also *Crenshaw v. State*, 254 S.W.2d 402 (Tex.Cr.App. 1953) and *Sharp v. State*, 217 S.W.2d 1017 (Tex.Cr.App.1949).

■ Given that the evidence was inadmissible, we may now determine whether the error in its admission was harmless. The trial court promptly sustained appellant's objection and instructed the jury to disregard the evidence. No further testimony was elicited. Cf. *Sharp*, supra. Error in the admission of improper testimony is usually cured by the court's instruction to the jury to disregard, except in extreme cases where the question or evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds. *Thompson v. State*, 612 S.W.2d 925 (Tex. Cr.App.1981); *White v. State*, 444 S.W.2d 921 (Tex.Cr.App.1969). This doctrine has been applied to instances involving admission of statements made by a defendant while in custody. *Harris v. State*, 375 S.W.2d 310 (Tex.Cr.App.1964). See also *Sharp*, supra.

■ We have examined the record in this case and do not believe that the question was clearly calculated to inflame the minds of the jury. Moreover, we do not believe that the question and response were of such a character that the court's instruction could not withdraw any adverse impression made upon the jury.

In his brief, appellant contends that the instruction to disregard did not cure the error caused by admission of the improper evidence, citing *Doyle*, supra. In *Doyle*,

the Supreme Court considered impeachment of a defendant concerning his post-arrest silence. The defense counsel had voiced objections to the line of questions, but his objections were overruled. *Id,* 426 U.S. at 615, 96 S.Ct. at 2243. Thus, the Court in *Doyle* was not confronted with situation where the objection had been sustained and the jury instructed to disregard. Also, the questioning in *Doyle* was more extensive than the single inquiry made at the trial below. We do not find persuasive appellant's construction of *Doyle.* We overrule his fourth ground of error.

In ground of error number five, appellant contends that the trial court erred by denying appellant's motion for mistrial when the prosecutor argued at the punishment phase that the jury should consider the parole laws. The record of final remarks during the punishment phase reflects that the prosecutor stated "But you can also reasonably deduct from the evidence that if he got a ten year sentence in 1970 and in 1974 he is out raping and killing, that somewhere sometime he might get out again." Counsel for the defense objected, stating: "Your Honor, in view of the Court's denial of our requested charge on the parole laws, I object to that." The trial court sustained the objection and instructed the jury to disregard the statements. Appellant's subsequent motion for mistrial was denied.

█ Proper jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. *Cannon v. State,* 668 S.W.2d 401 (Tex.Cr.App.1984); *Denison v. State,* 651 S.W.2d 754 (Tex.Cr.App.1983); *Kerns v. State,* 550 S.W.2d 91 (Tex.Cr.App.1977); *Thomas v. State,* 519 S.W.2d 430 (Tex.Cr.App.1975).

The record of the trial below indicates that during appellant's closing remarks during the punishment phase of trial, and prior to the prosecutor's remarks now considered, counsel for appellant stated the following:

"In any case, we know Donald Franklin has been a model prisoner. I submit you to in considering your answer to Special Issue Number Two, you can consider that he will remain in the Texas Department of Corrections for life, or for certainly a long period of time and until such time as the professionals, also that are available to us in our penal systems, have determined that he is no longer any threat to anybody."

█ The remarks made by appellant's counsel placed the issue before the jury. The prosecutor, therefore, was entitled to answer the comments made by opposing counsel. No improper jury argument was made. See *Holloway v. State,* 525 S.W.2d 165 (Tex.Cr.App.1975), at 169; see also *De La Rosa v. State,* 658 S.W.2d 162 (Tex.Cr.App.1983).

█ Even if appellant's counsel had not opened the door to the prosecutor's remarks, reversible error is not shown. Generally, a prosecutor may not refer to or mention parole laws during final argument. *Clark v. State,* 643 S.W.2d 723 (Tex.Cr.App.1983); *Hughes v. State,* 493 S.W.2d 166 (Tex.Cr.App.1973). If such improper jury argument is made, however, such error is not reversible unless, viewing the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the accused, into the trial. *Cannon,* supra at 404, citing *Todd v. State,* 598 S.W.2d 286 (Tex.Cr.App.1980).

█ We have examined the record and do not find that the argument was so egregious as to constitute reversible error. Also, since the trial judge sustained the objection and instructed the jury to disregard, any error incurred by the prosecutor's remarks was rendered harmless. See *Holloway,* supra at 169. See and cf. *Clark,* supra, at 725. See also *Stephen v. State,* 677 S.W.2d 42 (Tex.Cr.App.1984). Appellant's fifth ground of error is overruled.

In his sixth and seventh grounds of error, appellant contends respectively, that

the trial court erred by denying his requested charge on punishment, and that the trial court erred by failing to instruct the jury not to consider the parole laws. Since appellant grouped discussion of these two grounds together, we will also deal with them together.

The record shows that appellant submitted a written requested charge during the punishment phase of trial which stated:

"During your deliberations as to the answers to be given to the special issues, you are not to consider how much of his sentence the defendant would be required to serve before being released on parole, if his punishment is assessed at life imprisonment. You are instructed, however, that under the law, a person who is serving a sentence of life imprisonment for the offense of capital murder may not be considered for release on parole until his actual calendar time served, without consideration of good conduct time, is twenty (20) years."

The trial court refused to so instruct the jury.

■ In *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980), the defendant was convicted of capital murder. On appeal, he contended that the trial court had erred in refusing to submit to the jury his specially requested charge which contained an explanation of the parole process and an instruction not to consider whether the defendant might be paroled. Judge W.C. Davis, writing for this court, stated:

"We hold that the trial court did not err in refusing to submit this charge to the jury. The matter of parole or a defendant's release thereon is not a proper consideration for a jury's deliberations on punishment. [citations omitted]. This is also true in a capital case where the jury's task at the punishment stage is to answer the special issues. [citations omitted] Further, the giving of an admonitory instruction in order to guard against the jury's consideration of parole is largely left to the trial court's discre-

tion. [citations omitted] We decline to adopt the view advanced by appellant, ... that a jury should be charged on the law of parole and then instructed not to consider the same."

*O'Bryan*, supra at 478. We hold that the trial court did not err in the instant case by refusing to submit appellant's requested charge.

In support of his contention that the trial court committed reversible error by failing to so charge the jury, appellant cites *Moore v. State*, 535 S.W.2d 357 (Tex.Cr.App.1976), *McIlveen v. State*, 559 S.W.2d 815 (Tex.Cr.App.1977), and *Sanders v. State*, 580 S.W.2d 349 (Tex.Cr.App.1978). In those cases, jury misconduct had occurred because the jurors had discussed parole laws. Appellant makes no claim that the jurors seated for his case acted improperly by discussing the parole laws, nor does the record reflect such misconduct. Thus, the cases cited by appellant are inapplicable. Appellant's sixth and seventh grounds of error are overruled.

■ In ground of error number eight, appellant maintains that the trial court erred by refusing to admit relevant and probative evidence in support of his defensive theory that Eugene Tealer had committed the offense. Appellant specifically refers to the exclusion of testimony from ten witnesses.

The record reflects that appellant sought to admit evidence regarding a rape of a Veterans Administration Hospital nurse committed by Eugene Tealer prior to the instant offense. The trial court inquired as to why such evidence should be admitted, since appellant had not impeached the State's identification witness and therefore identification was not in issue. Appellant responded that since the case was based on circumstantial evidence, the testimony regarding Tealer's commission of a similar offense should be admitted. The trial court then refused to admit the evidence, holding it to be irrelevant.

In *Ferrell v. State*, 429 S.W.2d 901 (Tex.Cr.App.1968), the defendant was charged

with armed robbery. He sought to introduce evidence of a similar robbery committed while he was in prison. We held that it was not error to exclude such evidence since evidence of offenses not committed by the accused is generally inadmissible. *Id*, at 903. Also, since identity was not contested at the trial below, the evidence regarding a similar offense was not inconsistent with appellant's guilt; therefore, the trial judge did not err by refusing to admit it. *Florio v. State*, 532 S.W.2d 614 (Tex.Cr.App.1976), and cases cited at 618–619. Cf. *id.* at 619, fn. 1. Appellant's eighth ground of error is overruled.

In his ninth ground of error, appellant contends that the venue over his case was improperly laid in Cameron County, after a change of venue from Bexar County, because the case was illegally transferred to Bexar County from Harris County. In his tenth ground of error, appellant contends that the trial court did not have jurisdiction over appellant's person, or of the subject matter of the case. We will address these contentions together.

The record reflects that after his first conviction was reversed, see *Franklin*, supra, the cause was remanded for a new trial. This new trial was conducted in Harris County. After the jury returned a conviction for capital murder, the trial court granted appellant's motion for a new trial based upon erroneous jury instructions.[3] The new trial was granted and the case was transferred to Bexar County. Appellant made a motion for change of venue, which was granted and the trial was moved to Cameron County.

Appellant contends that the initial transfer from Harris County to Bexar County was illegal since the Harris County judge did not comply with the requirements of Article 31.10, V.A.C.C.P., by indicating that appellant could not receive a fair trial in Harris County, by giving due notice to the parties, and by then conducting a hearing on the matter.

■ Initially, there is no record that, at the time of the transfer, appellant objected to the transfer of the case from Harris County to Bexar County. To properly object and preserve the matter for review, appellant should have reserved a bill of exceptions at the time the transfer order was entered in Harris County. *Lomax v. State*, 176 S.W.2d 752 (Tex.Cr.App.1944). Absent such a record, the matter is waived.

Moreover, the record shows that appellant specifically consented to the change of venue to Cameron County from Bexar County. Even if he had objected to the transfer to Bexar, such objection was waived when he moved to change the venue in the Bexar County District Court, and consented to that court's transfer of the situs of the case to Cameron County. *Ex parte Watson*, 601 S.W.2d 350 (Tex.Cr.App.1980), and cases cited therein at 351.

■ Assuming that any error regarding this matter was preserved by objection, the record does not support appellant's claim that the Harris County judge failed to comply with the provisions of Art. 31.01, supra. Mere assertions in a brief not supported by evidence in the record will not be considered on appeal. *Beck v. State*, 573 S.W.2d 786 (Tex.Cr.App.1978); *Webb v. State*, 533 S.W.2d 780 (Tex.Cr.App.1976).

■ Last, even if there were improprieties in the change of venue, the trial court's jurisdiction over appellant was not affected. In *Ex parte Watson*, supra, we had previous cause to discuss the relationship between venue and jurisdiction. Judge Phillips, writing for the court, stated:

"Venue is distinct from jurisdiction. The latter concerns the power of the court to hear and determine the case. Venue means the place where a case may be tried.

    ·    ·    ·    ·    ·

It is apparent ... that, strictly as a matter of jurisdiction, a district court may

---

**3.** The portion of the charge applying the law to the facts failed to allege that appellant had acted intentionally or knowingly. See *infra*.

try any case in which the offense takes place within the State. Of course in a given case venue may not be proper under the provisions of Chapter 13 of the Code of Criminal Procedure. The failure to comply with those provisions, however, does not deprive the district court of jurisdiction."

*Watson*, supra at 352–353. Thus, even if the venue were improperly laid in Cameron County, the trial court did not lose jurisdiction over appellant. Appellant's ninth and tenth grounds of error are overruled.

In his penultimate ground of error, appellant asserts that the trial court erred by proceeding to trial on a charge of capital murder because the prosecution of that charge was barred by principles of double jeopardy. He argues that since he was granted a new trial after the verdict was rendered in the trial in Harris County because the charge submitted to the jury failed to allege that he committed the capital murder intentionally while in the course of committing one of the underlying felonies, that jeopardy should bar retrial.

The record of the jury's verdict in the Harris County trial indicates that appellant was convicted of capital murder. The charge submitted to that jury, however, failed to allege that the offense had been committed intentionally. See *Doyle v. State*, 631 S.W.2d 732 (Tex.Cr.App.1980); *Mendoza v. State*, 577 S.W.2d 240 (Tex.Cr. App.1979). The State conceded error, and the trial court granted appellant's motion for new trial, whereupon the instant trial was had.

Appellant now asserts that since the first charge did not allege that the offense was committed intentionally, the jury found appellant guilty of at most, non-capital murder. Thus, he claims, the second trial should have been barred by double jeopardy.

Article 40.08, V.A.C.C.P. provides in part that "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place." Thus, if a motion for new trial is granted, jeopardy does not attach. See

*Whitehead v. State*, 286 S.W.2d 947 (Tex. Cr.App.1956). (Of course, if the defendant is convicted of a lesser included offense of that for which he is indicted, and a new trial is granted, the verdict upon the first trial shall be considered an acquittal of the higher offense. Art. 37.14 V.A.C.C.P.)

Also, double jeopardy does not attach when a case is reversed because of trial error, such as improper jury instructions, as opposed to a reversal based upon evidentiary insufficiency. *Ex parte Duran*, 581 S.W.2d 683 (Tex.Cr.App.1979), at 684, quoting from *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), 437 U.S. at 15, 98 S.Ct. at 2149. Accordingly, jeopardy does not attach to the offense for which the defendant was convicted when a court grants a new trial because the charge contained improper instructions.

In support of his contention, appellant urges this Court to extend its holding in *Benson v. State*, 661 S.W.2d 708 (Tex.Cr. App.1982), and find that jeopardy should bar the re-trial of any offense in which the court's charge authorizes a conviction for an offense lesser than, but included within, the offense charged in the indictment. In *Benson*, the jury was presented with a charge that contained no error, but expanded that which the State was required to prove. We found that although the charge contained elements of proof not required for conviction for the indicted offense, the State was nonetheless required to prove what was charged beyond a reasonable doubt. It followed that if the evidence did not conform to the instructions as given, then the proof was insufficient to support the only verdict of "guilty" that was authorized by the charge. We held that there was insufficient evidence to support the allegations as set forth in the charge, and entered an order of acquittal.

We do not believe that *Benson* may be extended so as to support appellant's requested finding. Moreover, to do so would conflict with Art. 37.14, V.A.C.C.P. Appel-

lant's eleventh ground of error is overruled.

■ In ground of error number twelve, appellant contends that the indictment returned against him was void since it did not conclude with the language "against the peace and dignity of the State," as is required by Art. V, § 12 of the Texas Constitution, and Article 21.02(8), V.A.C.C.P.

The indictment contained in the record shows that appellant was initially charged with three counts of capital murder. The last paragraph charged appellant with murder in the course of committing and attempting to commit rape. Shortly after trial had begun, the State indicated that it wished to waive the third count, and proceed to trial on only the first two counts. Sometime thereafter, someone drew a line at the top of the third paragraph, another line at the bottom of the paragraph, and a diagonal line from the top left to the bottom right of the paragraph.[4] The phrase "against the peace and dignity of the State" appeared as the last sentence of the third paragraph. Appellant maintains that the effect of the bottom line drawn was to include the required concluding phrase in that which was waived by the State; thus, appellant was tried on a void indictment.

Initially, we disagree with appellant's contention that the bottom line severed from the indictment the required concluding phrase. The record reflects that the State intended to waive the third count of the indictment involving the charge of murder in the course of committing rape. The record does not reflect that the State had any intention of waiving the concluding phrase when it elected to proceed on only two counts. Also, the record reflects that the trial judge understood that the third count was to be waived. No mention was made regarding waiver of the required phrase. Thus, regardless of who drew the lines on the indictment, the intent of the State and the trial judge's understanding

of that intent was to simply abandon prosecution on the third count.

Also, the lines do not render the indictment void even though they were drawn so as to include the concluding phrase. In *Finklea v. State*, 481 S.W.2d 889 (Tex.Cr. App.1972), the indictment contained two prior non-capital felony convictions alleged in the second and third paragraphs which the State intended to use for enhancement purposes. Before the trial began, the State moved to strike the second and third paragraphs, and proceed to trial on only the first. The court granted the motion. The defendant argued on appeal that the third paragraph was separated from the required concluding phrase by only a comma, and the phrase was therefore stricken with the third paragraph. We rejected that argument and held that the necessary words "against the peace and dignity of the State" had not been waived with the enhancement paragraph.

In *Franks v. State*, 513 S.W.2d 584 (Tex. Cr.App.1974), prior to trial, the State waived and abandoned the last of a two count indictment. The concluding phrase was separated from the second count by a comma. The defendant contended that the State's waiver of the second count included the necessary concluding words. Again, the defendant's contention was rejected. The court noted that although it was proper to insert the concluding phrase following all of the counts in the indictment, it was not necessary. See *id.* at 585–586, and cases cited therein.

Appellant refers this court to several decisions in support of his contention; we find them inapplicable. He first refers to a Fort Worth Court of Appeals decision in *Brown v. State*, 659 S.W.2d 499 (Tex.App. —Fort Worth 1983) affd. 672 S.W.2d 487 (Tex.Cr.App.—1984). In that case, the State offered two pen packets as proof of the allegations in the enhancement paragraphs. Contained in these records was a

---

4. The record of a hearing on objections held in Bexar County subsequent to the trial in Cameron County indicates that no one was certain who drew the lines on the indictment. Also, the trial transcript shows only that the indictment was read; the court reporter did not take down what was actually read.

**434**

copy of an indictment, which the trial court noted was cut off before the signature line and the phrase "against the peace and dignity of the State." The trial court overruled the defendant's objection that the indictment was insufficient. The Fort Worth Court of Appeals affirmed, stating that on its face, the document was simply a partial copy of the indictment, and that there was no showing the real indictment lacked the required words. *Id.* 659 S.W.2d at 502.

Appellant also refers to an Amarillo Court of Appeals decision in *Dunn v. State*, 646 S.W.2d 576 (Tex.App.—Amarillo 1983, no writ), which involved an indictment with several attached typewritten sheets, not numbered sequentially nor incorporated into the form indictment, which alleged additional counts. The appellate court held that since the sole connection between the printed portion of the indictment and the attached sheets was the staple in the upper left hand corner which affixed the sheets together, the required concluding phrase present on the form indictment did not apply to the attached paragraphs. The prosecution was then dismissed as to the attached counts. Since the indictment in the case at bar is not similar to that examined in *Dunn,* nor did that case involve waiver of separate counts in the indictment, we find the decision unpersuasive.

Last, appellant refers to the decision in *Ex parte Warnell*, 606 S.W.2d 923 (Tex.Cr. App.1980). In that case, the information to which the defendant pled guilty did not conclude with the words "against the peace and dignity of the State." Judge Onion, writing for the Court, noted that the rule requiring the concluding words applied to indictments and informations, and ordered the felony information filed against the defendant dismissed. In the present case, the indictment did contain the required concluding words. Thus, *Warnell* does not apply.

Since in the present case, the required language appears on the indictment, and there is no indication that the State intend-

ed to waive the concluding phrase with the count involving rape, we find that the indictment was not in violation of the Texas Constitution or Code of Criminal Procedure. Appellant's last ground of error is overruled.

Finding no reversible error, we affirm the conviction.

WHITE, J., not participating.