**Keith Zigwin CARTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–92–00433–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 4, 1993.

Discretionary Review Refused
April 21, 1993.

Stanley G. Schneider, Houston, for appellant.

Scott A. Duree, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from the denial of relief by the trial judge at the hearing on the writ of habeas corpus. Appellant, Keith Zigwin Carter, filed the application for writ of habeas corpus seeking dismissal of an indictment for possession of cocaine. Appellant brings two points of error. We affirm.

The jury rejected appellant's not guilty plea to the offense of possession of less than twenty-eight grams of cocaine and the trial court, after finding the one enhancement paragraph in the indictment to be true, assessed punishment at thirty (30) years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant filed a motion for new trial on November 11, 1991. After a hearing, the trial court granted a new trial on December 2, 1991. On April 22, 1992, appellant filed an application for writ of habeas corpus seeking dismissal of the indictment in Cause Number 606,797. After a hearing, the trial court denied the relief sought by appellant. Appellant appeals from the denial of habeas corpus relief.

In two points of error, appellant contends that the trial court erred in denying habeas corpus relief barring retrial. He maintains that because the state intentionally concealed material and exculpatory evidence, jeopardy attached. His authority is the United States and Texas Constitutions. Appellant is in effect arguing that the State's alleged suppression of evidence in the first trial, was misconduct which now bars subsequent retrial.

The record does not reveal that the Houston Police intentionally concealed evidence, to wit: names of witnesses at the scene, which was material and exculpatory to appellant as he contends in his two points of error. The record reveals the trial court properly made no such finding in deciding to grant appellant's motion for new trial. Such a conclusion was not implicit in the granting of the new trial because within the grounds proffered in appellant's motion for new trial, the ruling could have been based solely on the ground of newly discovered evidence without consideration of the intent of the police officers. Therefore, the trial court's judgment can be affirmed on the ground that appellant's threshold premise of *intentional* concealment was not sufficiently grounded in the record.

The relevant facts at the trial are as follows: Officer G.M. Goins testified that on May 20, 1991, he was assigned to Southeast Division working in an undercover capacity. He went to the 3000 block of Bolt at approximately 11:30 p.m. to investigate narcotics trafficking at Pampers Lounge. Goins was driving a black pickup. He pulled into the parking lot of Pampers and a black male, later identified as Leon Butler, walked over to the driver's side of his vehicle. Goins asked him for a "20". As he did so, Goins observed a black male sitting inside a brown Cadillac on the passenger side. The passenger door of the Cadillac was open and the dome light was on. Goins identified appellant as the man in the Cadillac. After Goins received the "rock", the raid vehicle arrived. Goins stated the raid team arrived within seconds of his departure. Four or five men were lined up and Goins drove by and identified appellant and a man named Butler. Goins returned to the substation and wrote his

report. Goins' report represents the only official report of the arrests in the 3000 block of Bolt on May 20, 1991 at 11:30 p.m. The report did not indicate how many people or cars were in the club parking lot at the time of the arrest. Goins did not remember seeing any car pull into the parking lot. He did not see anyone else around the car at the time of the arrest.

Goins was shown Defense Exhibit Number 7 and testified that the person depicted in the picture resembled appellant. This was a picture of Terrance Evans. An ID with the name Terrance Evans and a birth date of 11–23–68 was found in the Cadillac along with the marked twenty dollar bill that had been used in the buy.

Frank Kurtz, a member of the Southeast Service Center's tactical unit, testified that on May 20, 1991, he was a member of the raid team that went to Pampers lounge on Bolt. He remained in constant communication with the undercover officers at the scene. The description he remembered was a black male suspect, sitting on the passenger side of a brown Cadillac and a delivery suspect in the parking lot near the car.

Kurtz testified, as he approached the club to make the arrest, he passed the undercover vehicle leaving on Kish, a street that ran perpendicular to Bolt. Upon arrival at the Pampers' Club parking lot, which took two to ten seconds, Kurtz found only one person inside the Cadillac. Appellant was arrested in the car. Kurtz identified State's Exhibit Number 4 as a picture of appellant taken on May 20, 1991, after his arrest. Kurtz recovered a marked twenty dollar bill under the passenger seat. He also recovered the drugs in the front seat of the car.

Kurtz did not remember any specific description of the people arrested except a black male in the Cadillac. The only lighting the witness remembered at the scene came from the headlights of his vehicle, the dome light in the Cadillac and his flashlight. Appellant was·surprised by the arrest.

Someone on the raid team found an identification card belonging to Terrance Evans

in the Cadillac. At the time of the arrest, Goins' vehicle was not present. No one got in or out of the vehicle as the arrest team arrived at the club. Police records indicated that the man in the Cadillac was identified by two names: Terrance Evans and Keith Carter.

Officer T.R. Walker testified that he was working with Officer Goins on May 20, 1991, in an undercover capacity attempting to make a "buy" at Pampers Lounge on Bolt. Upon arrival at the club, a black male approached the car and Goins asked him for a "20". There were a few other people in the parking lot. The black male walked to the Cadillac and approached a man sitting in the passenger side of the Cadillac. Appellant was identified as the man in the passenger seat. Walker observed the first black male give Goins a rock, take Goins $20 bill and deliver it to the person in the car. Walker saw the arrest of Appellant. Walker saw Butler approach the Cadillac, but he never saw appellant get out of the vehicle. Walker stated that he saw the raid team make the arrest about thirty seconds after he and Goins left the scene of the buy.

Walker remembered that on the night of May 20, 1991, two or three other arrests were made by the same tactical unit·both before and after the arrests at Pamper's Lounge. Walker could not remember where the other arrests were made. Walker was shown Defense Exhibit Number 16, appellant's driver's license, and he could not identify the person depicted in the photo. The witness remembered seeing Defense Exhibit Number 7, a picture of Terrance Evans, as someone he remembered seeing at the scene of appellant's arrest.

Leticia Cox testified for the defense stating that on May 20, 1991, she went to Pamper's Lounge at approximately 11:30 p.m. with Tracy Jones. She remembered seeing Keith Carter drive into the parking lot in his car. She remembered Keith because he tried to take her parking space. Keith got out of his car and approached the lounge. She was standing by the door way, waiting to tell him off, when someone called to him from a gold Cadillac. She

saw a person sitting in the front seat. Keith went to the car, got in the driver's side and then the police arrived. Cox saw four people arrested. She saw Leon and a guy named Freddie get arrested. She did not know Keith personally, but recognized him from the neighborhood.

Tracy Jones testified that she went to Pamper's Lounge with her friend, Leticia Cox, on May 20, 1991. She saw Keith Carter walking towards the building when she heard someone calling to him from the Cadillac. Carter walked toward the Cadillac and got in the driver's seat. She saw one person in the front seat of the Cadillac sitting in the passenger's seat. She did not see anyone else in the Cadillac. There were a number of people hanging around outside the club. Shortly after Keith got in the front seat of the car, police arrived and arrested the people in the car along with two other people. The witness recognized Defense Exhibit Number 7 (picture of Terrance Evans) as a picture of a person she knew from the neighborhood.

Arthur Smith testified, on the evening of May 20, 1991, he was in Pamper's Lounge. An officer came into the club and asked who the car belonged to. After Smith told the officer that the Cadillac was not his car, he was taken outside the club to the Cadillac. He was shown an I.D.

Leticia Cox, again testified that she heard the police and Keith Carter arguing about an I.D. found in the car. The police told Keith that the I.D. was his and he denied owning the I.D.

After hearing this evidence the jury found appellant guilty. Appellant filed a motion for new trial in which he alleged: (1) that his right to a fair trial was abrogated when the state suppressed evidence material to his defense; and (2) that appellant located newly discovered evidence which would have changed the outcome of his trial, had it not been suppressed by the state.

On December 2, 1991, a hearing was held pursuant to appellant's motion for new trial. Officer Frank Kurtz testified for the defense that two people were arrested at 3000 Bolt in addition to appellant and his codefendant, Leon Butler. The record reflects that Kurtz was shown a four page document relating to Joe Terrance Hern, which indicated that Hern was arrested by Officer Goins at 3025 Bolt at 11:30 p.m. Frederick A. Cannady was arrested at 2335 Bolt, for possession of drug paraphernalia by Officer Billings. After reviewing the offense report of appellant's arrest, Kurtz testified that there was no mention of either Joe Terrance Hern or Frederick A. Cannady being arrested at Pamper's Lounge along with either Keith Carter or Leon Butler. Kurtz testified that, normally, if a city ordinance is violated no offense report is generated. The command procedure manual does not require disposition of all persons arrested at a scene on a felony except those arrested for the felony itself. According to Kurtz, in his opinion, people who are arrested at a scene are not necessarily witnesses to the offense. In this instance, the offense report did not identify the name of any person found at the scene of appellant's arrest.

Kurtz interpreted section 5.02 of the command procedure manual requiring only those people arrested on the actual felony case be listed in the offense report not other people arrested on other charges. Police blotters are normally given to the case officer making the report so he can have that information.

Officer Steven Billings testified that he participated in the arrest on May 20, 1991, at Pamper's Lounge. He did not testify during Keith Carter's trial. He remembered arresting a person named Frederick A. Cannady in the parking lot of a club. He stated that pursuant to 5.01 of the manual he would probably have listed all persons arrested, including those arrested for misdemeanors, in the offense report. Billings did not remember what property was in Cannady's possession at the time of the arrest.

Sergeant Cuevas testified, he was the supervising officer on the raid team for the Southeast Tactical Squad on May 20, 1991, at Pamper's Lounge. He participated in the arrest of Joe Hern, Frederick Cannady, Keith Carter and Leon Butler. It was Offi-

cer Cuevas understanding that Frederick Cannady and Joe Hern were neither witnesses to the drug deal nor involved in the drug deal—but they were arrested in the parking lot of the club. No one who reviewed the report could tell what persons were arrested at the scene.

Officer Goins was called as a witness and testified that he did not recall seeing the police blotters for either Joe Hern or Frederick Cannady reciting their arrest on May 20, 1991. Officer Goins made a decision not to include their names in a picture board as either witnesses or suspects arrested at the scene on May 20, 1991. He did not remember informing the prosecution that there were other people arrested at the scene on May 20, 1991. He did not remember seeing any person around the car at the time of appellant's arrest. Officer Goins testified that any persons in the parking lot, where Hern and Cannady were arrested, would be witnesses to appellant's arrest.

Keith Carter testified that on May 20, 1991, he was arrested with three other people. He did not know Frederick Cannady. The first time that he met Cannady was in the Harris County jail. Prior to his arrest Carter had met Joe Hern, but he thought his name was Hearne. He had neither the mens' real name nor any information about them.

Frederick Cannady testified that on May 20, 1991, he was at Pamper's Lounge. As he was leaving the lounge, he saw a brown Cadillac parked in front of the club. He saw a man he identified in Defense Exhibit Number 7, Terrance Evans, leaving the Cadillac. Cannady got into the back seat of the Cadillac. Joe Hern was sitting in the front passenger seat of the car. He called to Keith Carter who had just driven into the parking lot. Keith got into the driver's seat when the police arrived. The man depicted in Defense Exhibit Number 7, a man identified as Terrance, was sitting in the front driver's seat of the car before he got out and walked towards the club. He was in the car about two minutes before the police arrived. After this hearing, the trial court granted appellant a new trial.

■ Where a defendant has requested a new trial and the motion is granted on some basis other than insufficient evidence, double jeopardy considerations do not bar a new trial. *See Franklin v. State*, 693 S.W.2d 420, 432 (Tex.Crim.App.1985); *Huffines v. State*, 646 S.W.2d 612, 613–14 (Tex. App.—Dallas 1983, pet. ref'd). The rationale behind this rule was perhaps most accurately summarized in *Lofton v. State*, 777 S.W.2d 96 (Tex.Crim.App.1989):

The safeguard afforded by our constitutional provisions is against being twice put in jeopardy for the same offense. Succinctly stated, they protect against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction and against multiple punishments for the same offense. (cite omitted) Obviously, applicant has not gained an acquittal nor suffered a conviction or any punishment. He faces another trial for the same offense because the trial court granted his motion for a new trial on a ground other than his claim that the evidence was insufficient.... The principal reason applicant is not entitled to relief is that under the facts of this cause he is not being threatened with exposure to "double" jeopardy. *Although it attached in the first trial, jeopardy was not terminated by an acquittal or conviction. After hearing, the trial judge did not order an acquittal for insufficient evidence; rather, the court set aside the verdict and vacated its judgment by granting a new trial on motion by applicant, thereby restoring the case "to its position before the former trial." Therefore, as with a new trial after a mistrial, initial jeopardy continues.*

*Id.* at 97 (citations omitted and emphasis added).

■ That jeopardy is not terminated when a defendant is granted a motion for new trial upon grounds other than insufficient evidence, is law accepted by Texas appellate courts as well as the Texas Court of Criminal Appeals. *Accord Franklin*, 693 S.W.2d at 432. More specific is the language in a First Court of Appeals deci-

sion. Accurately summarizing the law in this case, that court held that a "motion for new trial must be granted on grounds of insufficient evidence [in order for] questions of jeopardy and sufficiency [to] be reviewed on appeal by pretrial writ of habeas corpus." *Ex parte Queen,* 833 S.W.2d 207, 208 (Tex.App.—Houston [1st Dist.] 1992, pet. pending). The rationale is that " 'the effect of a new trial is to place the cause in the same position in which it was before any trial has taken place.' Thus, if a motion for new trial is granted, jeopardy does not attach." *Franklin,* 693 S.W.2d at 432 (quoting *Whitehead v. State,* 162 Tex. Crim. 507, 286 S.W.2d 947 (Tex.Cr.App. 1956)).

 In the present case, appellant does not contend that the evidence in the first trial was insufficient. On the contrary, the grounds upon which appellant based his motion for new trial were newly discovered evidence, and suppression of favorable evidence. Therefore, appellant received all the relief to which he was entitled upon the trial court's granting of a new trial.

Although appellant asks this court to extend the scope of double jeopardy to bar retrial after a defendant's motion for new trial is granted for the suppression of favorable evidence, he cites no authority which would support such extension. He attempts instead to make analogies to cases barring a second trial where the first was halted by intentional prosecutorial or judicial "goading". *See: Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). No court has so extended this rule.

We find that jeopardy does not attach when a defendant is granted a motion for new trial on grounds other than insufficient evidence. Also, appellant directs this court to no authority which would extend the scope of the double jeopardy bar to include the barring of a retrial after a defendant's motion for new trial is granted for unintentional suppression of favorable evidence. Appellant's first and second points of error are overruled.

Accordingly, the judgment of the trial court is affirmed.