

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00046-CR
No. 02-17-00047-CR

_____

JOSHUA ERIC TOWNLEY, Appellant

V.

THE STATE OF TEXAS

_____

On Appeal from the 43rd District Court
Parker County, Texas
Trial Court Nos. CR16-0114, CR16-0115

_____

Before Walker and Pittman, JJ.; and Charles Bleil (Senior Justice, Retired, Sitting by Assignment).
Memorandum Opinion by Justice Pittman

# MEMORANDUM OPINION

In two separate causes, a jury convicted Appellant Joshua Eric Townley of one count of sexual assault of a child under seventeen—by penetration of her mouth with his penis—and found the enhancement allegation true, and the trial court imposed a life sentence. The trial court stacked the two sentences. In five points, Appellant complains that in both causes,[1] the trial court abused its discretion by:

- rescinding its order granting a new trial (Point One);

- denying his motion to suppress and admitting during the guilt-innocence phase State's Exhibit 1, his videotaped interview with law enforcement (Point Four);

- admitting State's Exhibit 3, records concerning his prior military conviction, as proof of the offense under Texas Code of Criminal Procedure article 38.37 and as proof of the sentencing enhancement allegation culminating in his mandatory life sentences (Points Two and Three); and

- admitting State's Exhibit 4, a copy of text messages sent by the complainant's cell phone to his cell phone (Point Five).

For the reasons stated herein, we affirm the trial court's judgments.

## BRIEF SUMMARY OF FACTS

The jury heard evidence that Appellant sexually abused the complainant over a period of years while Appellant and her mother were in a relationship. At the age of fourteen, the complainant made an outcry to her mother, who notified law

---

[1]Our discussion and disposition of Appellant's points therefore applies equally to both causes despite any use of the singular form.

enforcement. Child Protective Services (CPS) interviewed the complainant's brother and Appellant's son, both of whom were also teenagers. During the investigation, Appellant also spoke with Investigator Pitman at the Parker County Sheriff's office, and Investigator Pitman videotaped the interview. In the interview, Appellant confessed to sexually abusing the complainant on several occasions; the abuse included several instances of Appellant penetrating her mouth with his penis. Appellant does not challenge the sufficiency of the evidence to support his convictions.

## DISCUSSION

### I.     Rescission of Order Granting New Trial

After the trial, Appellant filed a timely notice of appeal. On the same day, he also filed a "Motion for New Trial and Motion in Arrest of Judgment" alleging that the verdicts were contrary to the law and the evidence. He further alleged the trial court had discretion to grant a new trial "in the interests of justice" and requested the trial court to set aside the judgments and order a new trial on the merits. The trial court granted the motion but three days later signed an order (1) rescinding the prior order; (2) stating that it had granted the motion "erroneously and unintentionally"; and (3) denying the motion. The appellate record had not yet been filed when the trial court rescinded its order. *See* Tex. R. App. P. 25.2(g) ("Once the record has been filed in the appellate court, all further proceedings in the trial court—except as provided otherwise by law or by these rules—will be suspended until the trial court

3

receives the appellate-court mandate.").

In his first point, Appellant contends that the trial court reversibly abused its discretion by rescinding its order granting his motion.

## A. Generally, a Trial Court May Freely Rescind an Order Granting a New Trial.

A trial court has the power to rescind its order granting a new trial; time alone does not limit this power. *Kirk v. State*, 454 S.W.3d 511, 515 (Tex. Crim. App. 2015) (eliminating the 75-day time limit imposed by *Awadelkariem v. State*, 974 S.W.2d 721 (Tex. Crim. App. 1998)). Appellant ignores *Kirk* and argues that *Awadelkariem*—in which the Texas Court of Criminal Appeals overruled precedent to hold that a trial court has power, albeit limited, to rescind its order on a motion for new trial, 974 S.W.2d at 722, 728—was wrongly decided.

## B. Double Jeopardy Considerations Could Still Limit a Trial Court's Freedom to Rescind an Order Granting a New Trial.

Focusing on his rights to be free from double jeopardy, Appellant relies on *Hudson v. Louisiana*, 450 U.S. 40, 101 S. Ct. 970 (1981), and *Moore v. State*, 749 S.W.2d 54 (Tex. Crim. App. 1988), to argue that the trial court abused its discretion by rescinding its order granting a new trial because that order was the "functional equivalent of an acquittal." *See Awadelkariem*, 974 S.W.2d at 724 (stating that the Court held in *Moore* that the granting of a new trial based on legally insufficient evidence was "the functional equivalent of an acquittal, causing the trial court's jurisdiction to lapse under double jeopardy principles"). *Hudson* and *Moore* both

4

involved orders granting new trials solely because of legally insufficient evidence. *Hudson*, 450 U.S. at 44, 101 S. Ct. at 973; *Moore*, 749 S.W.2d at 56. The *Hudson* court held that the Double Jeopardy Clause barred a retrial in those circumstances, implicitly holding that acquittal was the appropriate remedy. *Hudson*, 450 U.S. at 44–45, 101 S. Ct. at 973. The *Moore* court held that the Double Jeopardy Clause barred the trial court from rescinding its order granting the new trial and that acquittal was the proper remedy. 749 S.W.2d at 58.

In overruling a line of prior cases that had held a trial court could not rescind an order granting a new trial, the *Awadelkariem* court both noted that *Moore* was distinguishable from the line of cases because it "involv[ed] double jeopardy considerations" and ostensibly overruled it along with other cases in that line. 974 S.W.2d at 724, 728.

Unlike *Hudson* and *Moore*, however, neither *Awadelkariem* nor *Kirk* concerned an order granting a motion for new trial solely because legally insufficient evidence supported the guilty verdict. *See Kirk*, 454 S.W.3d at 512 (noting the trial court revoked the defendant's deferred adjudication community supervision, adjudicated his guilt, and sentenced him, and his "Motion for Commutation of Sentence" complained only of the sentence); *Awadelkariem*, 974 S.W.2d at 722 (noting the trial court granted the motion for new trial because the defendant agreed to change his plea to guilty in exchange for deferred adjudication). The *Kirk* court also did not mention *Moore* or expressly recognize a *Moore* exception to the general rule allowing trial courts to freely

rescind their orders granting new trials but did recognize that exceptions could exist by expressly noting what it was not addressing. Specifically, the *Kirk* court did not:

> address whether the trial court's ability to rescind an order granting a new trial could be affected by events occurring after the grant of a new trial, such as . . . the start of the new trial [or] whether a defendant's double-jeopardy rights would affect a trial court's ability to rescind an order granting a new trial after the new trial has begun.

*Kirk*, 454 S.W.3d at 511 n.1. Thus, *Moore*'s continued validity for the proposition that a trial court cannot rescind an order granting a new trial solely on the basis that legally insufficient evidence supports the verdict is unclear.

## C.     Appellant Is Not at Risk of Double Jeopardy.

We do not need to resolve *Moore*'s present viability, however, because Appellant's motion for new trial did not raise only legal sufficiency as a ground for granting a new trial. When a motion for new trial is granted on a ground other than legal sufficiency, the Double Jeopardy Clause is not implicated. *See, e.g., Dennington v. State*, No. 05-92-01892-CR, 1997 WL 112750, at *1 (Tex. App.—Dallas Mar. 14, 1997, pet. ref'd) (not designated for publication); *Carter v. State*, 848 S.W.2d 792, 796 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

Appellant's motion sought a new trial (1) because the verdicts were allegedly contrary to the law and the evidence but also (2) in the interest of justice. The motion did not mention sufficiency; however, the wording of the first ground typically indicates a challenge to the sufficiency of the evidence to support the conviction. *See State v. Zalman*, 400 S.W.3d 590, 594 (Tex. Crim. App. 2013) ("In *Bogan v. State* we held

6

that allegations that a verdict was against the law and the evidence raised a sufficiency challenge and *only* a sufficiency challenge.") (footnote omitted). *But see Clarke v. State*, 270 S.W.3d 573, 580 n.18 (Tex. Crim. App. 2008) (stating that a trial court would be within its discretion to refuse to set a motion for new trial "alleging such a general ground" as "the verdict is contrary to the law and the evidence" for hearing but noting that the trial court could rule on a *Brady* issue raised at such a hearing by granting or denying the motion).

Appellant raised his second ground, "[i]n the interest of justice," separately in the motion, and it is a ground that can be distinctive from sufficiency of the evidence. *See State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007) (noting that grounds for new trial listed in appellate rule 21.3 are "illustrative, not exclusive" and holding that "[a] trial judge has discretion to grant or deny a motion for new trial 'in the interest of justice,' but 'justice' means in accordance with the law") (citations omitted); *Dennington*, 1997 WL 112750, at *1–2.

The trial court's order granting Appellant's motion for new trial did not indicate the basis for the decision. The trial court could have granted the motion in the interest of justice (or unintentionally, as the trial court stated). Consequently, the order was not functionally equivalent to an acquittal, and the Double Jeopardy Clause was not implicated. *See Dennington*, 1997 WL 112750, at *1–2. Thus, to the extent that a double-jeopardy limitation on a trial court's power to rescind an order granting a new trial remains after *Kirk*, that limitation does not apply here.

7

**D.     The Trial Court Did Not Abuse Its Discretion by Rescinding Its Order Granting Appellant a New Trial.**

Applying *Kirk*, we hold that the trial court had the power to freely rescind its order granting a new trial and therefore did not abuse its discretion by doing so. *See Kirk*, 454 S.W.3d at 515.

To the extent Appellant also argues that the trial court abused its discretion by rescinding its order granting the motion to arrest judgment, our resolution is the same.  As our sister court in Houston has explained,

> [A] trial court has all the necessary inherent power to correct, modify, vacate or amend its own rulings in order to effectuate its judgment.  So long as the court does not by its ruling divest itself of jurisdiction or exceed a statutory time table, it can simply change its mind on a ruling. *The ability to do so is a necessary function of an efficient judiciary.*

*Meineke v. State*, 171 S.W.3d 551, 555 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (citations and internal quotation marks omitted).  We therefore hold that the trial court also did not abuse its discretion by rescinding its order granting the motion to arrest judgment.

Having held that the trial court did not abuse its discretion by rescinding its order granting Appellant's "Motion for New Trial and Motion in Arrest of Judgment," we overrule Appellant's first point.

## II.     Appellant's Recorded Oral Statement to Law Enforcement

Appellant filed a pretrial motion to suppress, among other things, oral statements he made to law enforcement.  In the motion, Appellant asserted that while

detained, he had given an oral statement without an attorney present and without being read his *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). The trial court denied the suppression motion after a hearing. During trial, the trial court admitted State's Exhibit 1, the recording of Appellant's interview with Investigator Pitman, over Appellant's objections. In the interview, Appellant admitted to committing multiple instances of child sexual abuse against the complainant, including multiple acts of penetrating her mouth with his penis, the charged offenses.

In his fourth point, Appellant contends that the trial court erred by denying his pretrial motion to suppress his oral statement to law enforcement and abused its discretion by overruling his objections to the admission of the statement during trial. Appellant argues that the only issue is whether he was in custody during the interview.

## A. We review the Trial Court's Denial of Appellant's Motion to Suppress Under a Bifurcated Standard of Review.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.–Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v.*

9

*State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on: (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

## B. If Appellant Was in Custody During the Interview, He Should Have Received the Article 38.22 Warnings.

As this court has previously explained,

> The United States Constitution commands that no person "shall be compelled in any criminal case to be a witness against himself." Constitutional and statutory protections are triggered when a person undergoes custodial interrogation. "Custodial interrogation" is the "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Article 38.22 of the code of criminal procedure also prohibits the use of statements that result from a custodial interrogation without compliance with its procedural safeguards.

> Custodial interrogation occurs when law enforcement officers question a person after taking him into custody or depriving him of his freedom of action in any significant way. A court must examine all of the circumstances surrounding the interrogation when determining whether someone is in custody; however, the ultimate inquiry is simply

10

whether there was a formal arrest or restraint on the freedom of movement of the degree associated with a formal arrest.

*Williams v. State*, 513 S.W.3d 619, 630 (Tex. App.—Fort Worth 2016, pet. ref'd) (citations omitted).

The Texas Court of Criminal Appeals has outlined four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect that he cannot leave; (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; or (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996); *Shiflet v. State*, 732 S.W.2d 622, 629 (Tex. Crim. App. 1985); *Parker v. State*, No. 02-14-00044-CR, 2015 WL 1793718, at *2 (Tex. App.—Fort Worth Apr. 16, 2015, pet. ref'd) (mem. op., not designated for publication). Appellant argues that option (3) is implicated here.

If Appellant was in custody when being questioned, then he was entitled to the warnings under article 38.22 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2(a), 3(a) (West 2018); *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (stating that the article 38.22 warnings "are virtually identical to the *Miranda* warnings" except the statutory warning that an accused "has the right to terminate the interview at any time," Tex. Code Crim. Proc. Ann.

11

art. 38.22, § 2(a)(5), has no *Miranda* counterpart). But Appellant had the initial burden of proving that his statement was the product of custodial interrogation. *Herrera*, 241 S.W.3d at 526; *Williams*, 513 S.W.3d at 631.

## C.	The Evidence Supports the Trial Court's Conclusion that Appellant Was Not in Custody When He Spoke with Investigator Pitman.

Investigator Pitman testified that:

- He called Appellant and asked him to come to the sheriff's office for an interview;

- Appellant arrived in street clothes;

- Appellant checked in with reception, and Investigator Pitman escorted him through a secured entrance to reach the small interview room;

- The door to the interview room was closed for privacy purposes;

- Appellant was neither handcuffed nor shackled;

- Appellant was neither under arrest nor in custody;

- Investigator Pitman did not read Appellant his *Miranda* rights;

- Investigator Pitman told Appellant that he was not under arrest, not being detained, and was free to go "[j]ust to let him know that he wasn't in custody";

- A person could leave the building without going through the secured door;

- The interview lasted about an hour;

- Appellant left after the interview, and Investigator Pitman escorted him out the secured door;

- Appellant was not arrested that day; and

- Investigator Pitman told Appellant during the interview that he would be seeking an arrest warrant.

Appellant claims with no support that "from the beginning[, he] inquired as to whether he needed an attorney during the interview" and that he was "assured that he [did] not need counsel." Our review of the interview shows otherwise. When the topic of the outcry arose, Appellant told Investigator Pitman that (1) when Appellant received the related CPS paperwork regarding custody of his son, his friends and family advised him to get a lawyer; and (2) he contacted a lawyer who told him to continue to do what he had been doing, to be cooperative, and to not answer questions if he did not feel comfortable. After Appellant confessed, he reiterated to Investigator Pitman that he had been advised to get a lawyer but said that he was not going to "lawyer up" and was going to take responsibility for his actions. Only after Investigator Pitman told Appellant that he was seeking an arrest warrant and explained the walk-through and bonding process did Appellant ask, "So at this point should I even get a lawyer?" Investigator Pitman replied that he could not give legal advice but that it "probably wouldn't hurt to talk to one again" because "it's not finished here."

Appellant also contends that the "coercive" nature of the environment—the locked doors, the "tiny interview room whose door [was] closed," the "passageways deep into the bowels of an obviously secured area," "an openly armed agent of the State" who "repeatedly lied to" Appellant to cause him to incriminate himself—and

13

Appellant's general knowledge that the police lie are proof that he was in custody, and he argues that his statement was therefore involuntary. An inducement does not make a confession involuntary unless it makes a suspect more likely to admit to committing a crime of which he is innocent. *Washington v. State*, 582 S.W.2d 122, 124 (Tex. Crim. App. [Panel Op.] 1979); *Fisher v. State*, 379 S.W.2d 900, 902 (Tex. Crim. App. 1964). Further, trickery or deception does not make a confession involuntary unless it was designed to convince an innocent person to confess to a crime or offended due process. *Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997). Our review of Investigator Pitman's testimony and the recorded interview does not raise those concerns.

**D.     The Trial Court Did Not Err by Concluding that Appellant Was Not in Custody and that His Statement to Investigator Pitman Was Voluntary, and the Trial Court Did Not Abuse Its Discretion by Admitting the Statement.**

Regarding Appellant's allegation of coercion, the United States Supreme Court has held in a similar situation,

> [Mathiason] came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½-hour interview [he] did in fact leave the police station without hindrance. It is clear from these facts that Mathiason was not in custody "or otherwise deprived of his freedom of action in any significant way."
>
> Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law

14

> enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977). Applying *Mathiason* and the other cases cited above, we hold that the record supports the trial court's determination that Appellant's statement was voluntary and its implied ruling that he was not in custody when he made the statement. We therefore hold that the trial court did not err by denying Appellant's motion to suppress and concluding that his statement was voluntary and did not abuse its discretion by admitting the statement at trial despite the motion to suppress. *See id.*; *Stone v. State*, 583 S.W.2d 410, 413 (Tex. Crim. App. [Panel Op.] 1979); *Parker*, 2015 WL 1793718, at *2–3. We sustain this part of Appellant's fourth point.

### E. Appellant Does Not Adequately Brief His Rule 403 Complaint About His Statement's Admission into Evidence.

Appellant's only additional objection when his statement was offered at trial was under rule 403 of the Texas Rules of Evidence, but he does not present any argument to support that part of his issue grounded in rule 403. If a party provides no argument or legal authority to support its position, the appellate court may properly overrule the issue or point as inadequately briefed. Tex. R. App. P. 38.1(i);

15

*Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (citing cases), *cert. denied*, 566 U.S. 1036 (2012). We therefore overrule the remainder of Appellant's fourth point as inadequately briefed.

### III. Admission of Appellant's Prior Military Conviction

**A. The Trial Court Admitted Records of Appellant's Prior Military Conviction as Evidence of His Guilt and as Evidence Triggering a Mandatory Life Sentence.**

The State filed a pretrial notice under Texas Code of Criminal Procedure article 38.37 of its intent to offer State's Exhibit 3,[2] records of Appellant's prior military conviction, during guilt-innocence, and a notice under Texas Penal Code section 12.42(c)(2) of its intent to offer the same records of the prior military conviction to enhance his punishment. The notices stated that in 1997, Appellant had been convicted by a military court of an offense similar to sexual assault of a child under Texas Penal Code section 22.011 or section 21.11(a)(1). The records included a stipulation signed by Appellant admitting that he had had sexual intercourse with a fourteen- or fifteen-year-old girl.

Appellant filed written objections opposing the admission of State's Exhibit 3 under rules 401, 402, 403, and 404(b) of the Texas Rules of Evidence. At the pretrial article 38.37 hearing, he further objected: (1) the evidence violated the

---

[2]State's Exhibit 3A was admitted for record purposes only and not as evidence against Appellant; we summarily overrule Appellant's complaints regarding it.

Confrontation Clause; (2) "Section 2(a) and (b) do not contemplate anything other than violations of Texas law"; and (3) the conviction, which occurred in Georgia, did not otherwise fall under the purview of article 38.37. The trial court overruled the objections.

At trial, the State moved to admit State's Exhibit 3, and Appellant "reurge[d] [his] prior objections, namely 403, along with all of the other prior objections" filed in written motions and raised orally. The trial court overruled the objections.

During the jury's deliberations of Appellant's guilt, he objected to the State using his prior military conviction as an enhancement: "There's no evidence . . . showing that . . . the elements [of that prior military conviction] are substantially similar" to the Texas Penal Code elements of sexual assault of a child under the age of seventeen. After the jury found Appellant guilty of the sexual assault charged in each case, the State moved to admit during the punishment phase all the evidence from the guilt-innocence phase of trial, and Appellant "reurge[d] all [his] objections" regarding that evidence and "specifically regarding [State's] Exhibit 3, . . . reurge[d] all [his] objections regarding that evidence regarding any kind of prior conviction, namely 403." The trial court overruled those objections and admitted the evidence. The jury found the enhancement allegation true.

## B.      The Trial Court Did Not Abuse Its Discretion by Admitting State's Exhibit 3 Under Article 38.37, Section 2.

In his third point, Appellant complains primarily of the trial court's admission

17

of State's Exhibit 3 during the guilt-innocence phase under article 38.37 of the Texas Code of Criminal Procedure. We review the trial court's admission of evidence under article 38.37 for an abuse of discretion. *Ryder v. State*, 514 S.W.3d 391, 399 (Tex. App.—Amarillo 2017, pet. ref'd); *see also Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) ("We review a trial court's decision to admit evidence [for] an abuse of discretion."), *cert. denied*, 565 U.S. 830 (2011).

Article 38.37, section 2(b), which applies to this case because Appellant was on trial for sexual assault of a child and indecency with a child, *see* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(a)(1)(C), (D) (West 2018), provides,

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2–a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) . . . may be admitted in the trial of an alleged offense described by Subsection (a)(1) . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

*Id.* art. 38.37, § 2(b). Section 2-a of article 38.37 provides,

> Before evidence described by Section 2 may be introduced, the trial judge must:
>
> > (1)    determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and
> >
> > (2)    conduct a hearing out of the presence of the jury for that purpose.

*Id.* art. 38.37, § 2-a.

Appellant initially argues that evidence is admissible under article 38.37 only to show a defendant's state of mind and his relationship with the complainant. Appellant does not direct us to the place in the record where he made this objection below, and we did not see it in our review. The complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."). Appellant has therefore forfeited this complaint. In the interest of justice, we note that although article 38.37, section 1 has the limitations Appellant suggests, *see* Tex. Code Crim. Proc. Ann. art. 38.37, § 1, article 38.37, section 2 does not, *see id.* art. 38.37, § 2.

Appellant's arguments in his brief regarding rules 402, 403, and 404b, mistakenly premised—like the rest of his argument—on section 1 and not on section 2 of article 38.37, are likewise unavailing:

> CCP Art. 38.37 permits the introduction of past crimes to explain the accused's state of mind and to show the relationship between the accused and a child victim. In this case there was no material, contested fact on either such issue. The relationship was shown and intent could be inferred from the direct evidence of the victim and the circumstances in the record. The Appellant did not open up the trial for the introduction of such evidence in cross-examination and did not testify.

19

Furthermore, the State from the get go went into such matters. Clearly the State offered such evidence to show that because the Appellant had had a conviction in the past it was likely that he had committed the instant offense as well. Other than the age of the child in the prior conviction there is nothing similar between the facts therein and the facts and circumstances presented in this trial. Such evidence of an act with a different victim in his 20's sheds no light on either of the issues Art. 38.37 refers to specifically with respect to the admissibility of such evidence. Even under TRE, Rules 402-404b such evidence would not have been admissible as it is only for purposes of showing the Appellant's bad character. In this case no evidence was inquired into that would have triggered the admissibility of such evidence under either Rules 403 or 404 and none of the evidence of SX-3/3A was directed to proof of the 2 matters permitted under Art. 38.37 CCP so that such evidence should not have been permitted during the guilt-innocence phase of the trial.

Because we reject the premise of these arguments, we reject the arguments in toto.

Appellant also argues that "[i]f the Legislature sought to mandate admissibility then Art. 38.37 is void because it contravenes the separation of powers provisions of our State Constitution (and by extension the due process provisions of the Federal Constitution) between the Legislative and judicial branches of government." Again, Appellant does not direct us to this complaint or the trial court's ruling thereon, and we did not see either in our review of the record. The complaint is therefore forfeited. *See Clark*, 365 S.W.3d at 339; *Lovill*, 319 S.W.3d at 691–92; *Pena*, 285 S.W.3d at 464; *see also McNamara v. State*, No. 02-16-00422-CR, 2018 WL 2248665, at *7 (Tex. App.—Fort Worth May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (noting that we would uphold the constitutionality of article 38.37, section (2)(b)).

Having disposed of the arguments Appellant raised in his third point, we overrule it.

## C. The Trial Court Did Not Abuse Its Discretion by Admitting State's Exhibit 3 as Proof of the Enhancement Allegation Under Section 12.42(c)(2)(B)(v) of the Texas Penal Code.

In his second point, Appellant complains of the trial court's admission of State's Exhibit 3, the records of his prior military conviction, during the punishment phase and of their use to enhance his punishment under section 12.42(c)(2)(B)(v) of the Texas Penal Code. Section 12.42(c)(2) provides in relevant part,

> (2) [A] defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life if:
>
> (A) the defendant is convicted of an offense:
>
> (i) under Section . . . 21.11(a)(1), 22.021, or 22.011, Penal Code;
>
> . . . and
>
> (B) the defendant has been previously convicted of an offense:
>
> . . .
>
> (ii) under Section . . . 21.11, 22.011, [or] 22.021, or . . .
>
> (v) under the laws of *another state* containing elements that are substantially similar to the elements of an offense listed in Subparagraph . . . (ii).

Tex. Penal Code Ann. § 12.42(c)(2) (West Supp. 2018) (emphasis added).

Appellant's trial objection to the use of his prior military conviction to enhance his sentence was that "[t]here's no evidence . . . showing that . . . the elements [of the prior conviction] are substantially similar to [his current] charges." However,

21

Appellant does not complain in this point on appeal that his prior military conviction is not substantially similar to his convictions before us. Instead, he contends that the military conviction does not qualify as a prior conviction under Texas Penal Code section 12.42(c)(2) because the statute requires a conviction from another state. Even if Appellant's trial objection preserved his complaint on appeal, he loses on the merits. The Texas Court of Criminal Appeals has already held that "convictions 'under the laws of another state' in Penal Code Section 12.42(c)(2)(B)(v) includes prior convictions under the [Uniform Code of Military Justice]." *Rushing v. State*, 353 S.W.3d 863, 866 (Tex. Crim. App. 2011), *cert. denied*, 570 U.S. 920 (2013). We overrule this portion of Appellant's second point.

**D.    The State Sufficiently Linked Appellant to His Prior Military Conviction.**

Within this point Appellant also challenges the sufficiency of the evidence tying the military conviction to him. We resolve this complaint in the same way that we resolve typical complaints that enhancement offenses alleged against a defendant have not been sufficiently tied to him. *See Fisk v. State*, 538 S.W.3d 763, 769–70 (Tex. App.—San Antonio 2017, pet. granted). To establish that a defendant was convicted of an enhancement offense, the State must (1) prove the existence of the conviction described in the enhancement allegation and (2) link that conviction to the defendant. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007); *Beck v. State*, 719 S.W.2d 205, 209–10 (Tex. Crim. App. 1986); *Davis v. State*, 268 S.W.3d 683, 715 (Tex. App.—Fort Worth 2008, pet. ref'd).

As the *Flowers* court explained,

> No specific document or mode of proof is required to prove these two elements. There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.

*Flowers*, 220 S.W.3d at 921–22 (footnotes omitted). A trial court abuses its discretion by admitting records of an enhancement offense (pen packet) absent evidence that the person convicted of the offense charged in the pen packet is the defendant before the court. *Beck*, 719 S.W.2d at 210; *Davis*, 268 S.W.3d at 715.

Appellant complains that State's Exhibit 3 does not contain fingerprints or a photograph of the person convicted and that the State relied on "hearsay testimony of a person who was not present at the time [of the alleged prior offense] nor even in a relationship with" him then and that as a nonexpert in handwriting analysis, "all . . . she could lawfully be permitted to say was that the signatures on [State's Exhibit 3] appeared to be" Appellant's based on her familiarity with his signature.

In addition to Appellant's former wife's testimony identifying the signatures on the documents in State's Exhibit 3 as Appellant's, other evidence links him to the person convicted in the military conviction:

23

- Appellant and the person with the military conviction have the same first name, last name, and middle initial; the same birthdate; and the same social security number;

- Appellant's wife testified that he had told her that he "was with . . . a younger girl in the Navy" when he was in his early twenties; and

- In his interview with Investigator Pitman, Appellant admitted that he "got in trouble in the military," that he and a minor teenager had an "established sexual relationship" and "three different occasions" of consensual sexual intercourse in Georgia, and that he had served eighteen months of a twenty-four-month sentence in the brig because of his conduct.

Although the identical first and last names, middle initials, birthdates, and social security numbers would likely be sufficient alone to link Appellant to the prior conviction, *see, e.g.*, *Haas v. State*, 494 S.W.3d 819, 824 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (relying on same birthdate, same driver's license number, and same first and last name to link defendant to a prior conviction), Appellant's admission in his interview with Investigator Pitman that while serving in the military, he had sexually abused a teenager and been confined as a result coupled with his wife's testimony that he had told her about being with "a younger girl" when he was in the Navy—both aligned with the records included in State's Exhibit 3—only increased the weight of evidence. We therefore hold that the evidence sufficiently links Appellant to his prior military conviction and that the trial court did not abuse its discretion by admitting State's Exhibit 3 during the punishment phase. We overrule Appellant's second point.

24

## IV.     Outgoing Texts from the Complainant's Cell Phone

In his fifth point, Appellant contends that the trial court abused its discretion by admitting during the trial on guilt-innocence State's Exhibit 4, written records of text messages sent from the complainant's cell phone to his cell phone number. Appellant initially objected on hearsay and relevancy grounds; under rule 403; as to improper foundation because the State had not established that the phone number to which the texts were sent belonged to him; and that it was "a one-sided conversation." Later, Appellant also objected that the State had failed to properly authenticate the exhibit. He did not make a running objection. Investigator Pitman testified about the content and significance of the texts without objection.

The preservation rule requires a party to object each time objectionable evidence is offered unless he has obtained a running objection or has requested a hearing outside the presence of the jury. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *see also Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining that Texas applies the "futility rule," meaning that even after a trial court overrules an objection to evidence, a party must keep making "futile" objections on pain of waiver). Unobjected-to testimony about objected-to evidence results in forfeiture of the objection. *See Clay v. State*, 361 S.W.3d 762, 767 (Tex. App.—Fort Worth 2012, no pet.) ("[B]ecause Wallace provided testimony about the Louisiana records without objection before and after appellant's objection to the admission of the records and because appellant failed to obtain a running objection, we conclude

25

that he forfeited his objection to the records' admission.") (footnote omitted); *see also* *Walker v. State*, No. 02-16-00418-CR, 2018 WL 1096060, at *4 (Tex. App.—Fort Worth Mar. 1, 2018, no pet.) (mem. op., not designated for publication).

Because Appellant did not make a running objection and did not object when Investigator Pitman discussed the texts' content and significance, we overrule Appellant's fifth point as forfeited.

## CONCLUSION

Having overruled Appellant's five points, we affirm the trial court's judgments.


/s/ Mark T. Pittman
Mark T. Pittman
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 11, 2018